Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Decided November 2, 2004

No. 01-7115

EMPAGRAN S.A., ET AL.,
APPELLANTS

v.

F. HOFFMAN–LAROCHE, LTD., ET AL.,
APPELLEES

On Remand from the United States Supreme Court

Before: EDWARDS, HENDERSON, and ROGERS, *Circuit Judges.*

Opinion for the court filed *Per Curiam.*

*Per Curiam*: In *F. Hoffman-LaRoche, Ltd. v. Empagran S.A.*, ___ U.S. ___, 124 S. Ct. 2359 (2004) ("*Empagran III*"), the Supreme Court vacated this court's judgment in *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 315 F.3d 338 (D.C. Cir. 2003) ("*Empagran II*"), regarding the reach of the domestic-injury exception to the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a. We

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

now face an issue that was left unresolved in *Empagran II* and in the Supreme Court's review of that decision.

Section 1 of the Sherman Act makes unlawful "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations . . . ." 15 U.S.C. § 1. Section 4 of the Clayton Act confers a cause of action on "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws," and provides for treble damages. *Id.* § 15(a). Section 16 of the Clayton Act entitles "[a]ny person, firm, corporation, or association . . . to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . . ." *Id.* § 26. In 1982, Congress enacted the FTAIA, which amended the Sherman Act to make the Sherman Act inapplicable to non-import foreign commerce unless the "conduct has a direct, substantial, and reasonably foreseeable effect" on domestic commerce, and "such effect gives rise to a claim under" the Sherman Act. *Id.* § 6a. In vacating the judgment of this court in *Empagran II*, the Supreme Court held that the FTAIA does not reach claims arising out of foreign injury that is entirely independent of the domestic effects of the allegedly anticompetitive conduct. The Court noted, however, that appellants had raised an "alternative" claim: the alleged anticompetitive conduct's domestic effects were linked to the asserted foreign harm, and without an adverse domestic effect (*i.e.*, higher prices in the United States), the sellers could not have maintained their international price-fixing arrangement and appellants would not have suffered their foreign injury. The Court expressly declined to decide whether this "but for" condition is sufficient to bring the contested price-fixing conduct within the scope of the FTAIA's exception. The case was remanded to this court for further proceedings on this issue.

Following remand from the Supreme Court, an order was issued by this court instructing the parties to submit briefs on three questions: (i) whether the alternative claim — which appellants argued to the Supreme Court — was properly pleaded; (ii) whether it was preserved before this court; and

(iii) if this alternative claim was properly pleaded and preserved, whether it should be resolved in the first instance by the District Court. *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, No. 01-7115, Order (D.C. Cir. June 21, 2004) ("Briefing Order"). Having reviewed the parties' briefs, the record of proceedings in this case, the District Court's decision in *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 2001 WL 761360 (D.D.C. 2001) ("*Empagran I*"), and the decisions in *Empagran II* and *Empagran III*, it is clear that appellants raised their so-called "alternative" claim before the District Court and before this court. It is also clear that appellees have never suggested at any point in this protracted litigation, at least, not before now, that appellants' alternative claim was either insufficiently pleaded or waived. Accordingly, we hold that the alternative claim was both pleaded and preserved.

The parties are in accord that this court, not the District Court, should rule in the first instance on the sufficiency of the alleged nexus between the purported foreign injuries and the domestic effects. We agree. This recommended course will preserve judicial resources and remain faithful to the integrity of the appellate process, because the issue can be resolved as a pure question of law. We will therefore order full merits briefing and schedule oral argument on whether the nature of the alleged link between foreign injury and domestic effects is legally sufficient to trigger application of the FTAIA's domestic-injury exception, and decide the question in the first instance.

Finally, appellants filed a motion in this court for a limited remand that would permit the District Court to conduct proceedings on issues relating to a $10 million settlement that plaintiffs reached with a subset of the defendants. *See* Pls.-Appellants' Mot. for Limited Remand (Aug. 19, 2004), at 1. The settlement was reached in December 2003, after this court filed its decision in *Empagran II* and before the Supreme Court granted *certiorari*. *See id.* at 3. Appellants submit that the settlement should be approved by the District Court prior to and irrespective of whether the court is ultimately found to have subject matter jurisdiction. *See id.*

at 4-6. We disagree. It would defy the basic tenets of federal jurisdiction for this court to remand the case to the District Court to oversee settlement proceedings before it has been determined whether the District Court has subject matter jurisdiction.

An order will be issued in due course establishing a briefing schedule and setting the case for oral argument.

## I. BACKGROUND

Appellants initially filed a class action lawsuit on behalf of foreign and domestic purchasers of vitamins alleging that appellees, foreign and domestic vitamin manufacturers and distributors, had engaged in anticompetitive activity that injured customers in the United States and abroad. Appellees moved to dismiss the suit as to foreign purchasers who bought vitamins from appellees outside the United States. The District Court granted appellees' motion to dismiss. *See Empagran I*, 2001 WL 761360. This court reversed. *See Empagran II*, 315 F.3d 338. The Supreme Court granted *certiorari* on the question whether foreign purchasers could bring a suit in U.S. courts when anticompetitive conduct with foreign effects, which are entirely independent of any domestic effects, gave rise to their claim. *See Empagran III*, 124 S. Ct. 2359. The Supreme Court vacated this court's judgment and remanded the case to this court for further proceedings. *See id.* at 2372-73.

The Supreme Court held that the domestic-injury exception to the FTAIA does not reach claims arising out of a foreign injury that is entirely independent of the domestic effects of the challenged conduct. *See id.* at 2372 ("We have assumed that the anticompetitive conduct here independently caused foreign injury; that is, the conduct's domestic effects did not help to bring about that foreign injury."). The Court acknowledged that respondents-appellants also had raised an "alternative" claim:

> Respondents argue, in the alternative, that the foreign injury was not independent. Rather, they say, the anticompetitive conduct's domestic effects were

linked to that foreign harm. Respondents contend that, because vitamins are fungible and readily transportable, without an adverse domestic effect (*i.e.*, higher prices in the United States), the sellers could not have maintained their international price-fixing arrangement and respondents would not have suffered their foreign injury. They add that this "but for" condition is sufficient to bring the price-fixing conduct within the scope of the FTAIA's exception.

*Id.* at 2372. The Supreme Court left open the question whether this alternative claim was properly pleaded and preserved below. *See id.*

This court subsequently ordered the parties to brief the questions presented above. *See* Briefing Order of June 21, 2004.

## II. ANALYSIS

### A. *Whether the Alternative Claim was Properly Pleaded*

Appellants submit that their complaint complied with the notice pleading requirement of the Federal Rules. Specifically, appellants argue that their complaint provided fair notice of their legal theory that the domestic effects of the allegedly anticompetitive conduct were necessary to induce the foreign injury because the complaint alleged (i) a "global market" for bulk vitamins; (ii) a small number of vitamins producers and significant barriers to entry; (iii) horizontal agreements in which North American and European manufacturers and distributors (defendants) agreed to leave each other's markets; and (iv) elimination of arbitrage as a key part of the conspiracy. *See* Appellants' Br. 2-3.

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint include a "short and plain statement" of the grounds for jurisdiction and of the claims alleged. *See* FED. R. CIV. P. 8(a). Appellants note that Rule 8(a) provides the only pleading requirement for their complaint, *see* Appellants' Br. 3 (citing, *e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506,

513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.")), and stress that "conclusory" allegations meet the requirement of this rule. *See id.* at 3-4 (citing, *e.g.*, *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)).

Appellants also argue that legal theories need not be pleaded. *See* Appellants' Br. 4. They rely on *Hanson v. Hoffmann*, 628 F.2d 42, 53 (D.C. Cir. 1980), which stressed that "[t]he liberal concepts of notice pleading embodied in the Federal Rules do not require the pleading of legal theories." In *Hanson*, this court read an implicit First Amendment claim into the plaintiff's complaint, which alleged sex discrimination but included the "basic factual allegation" for a First Amendment claim. *See id.* *Hanson* noted that "[u]nless a defendant is prejudiced on the merits by a change in legal theory, a plaintiff is not bound by the legal theory on which he or she originally relied." *See id.* at 53 n.11 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1219 (1969)).

Appellees counter that appellants' complaint failed to plead a nexus between their purported foreign injury and the domestic effects of the allegedly anticompetitive activity. *See* Appellees' Br. 4. Appellees argue that what appellants' complaint had actually alleged was foreign injury from a worldwide conspiracy, which also harmed U.S. commerce. *See id.* For this reason, appellees argue, the complaint failed to provide adequate notice of appellants' alternative claim. *See id.*

Appellees do not respond to any of the complaint's specific allegations that appellants discuss in their brief, but rather dismiss appellants' argument as "*post hoc* wordplay." *Id.* Appellees also do not point to any part of appellants' complaint to support their characterization of what was actually pleaded. Instead, they purport to rely on the District Court's decision, which stated that "[p]laintiffs have not alleged that the precise injuries for which they seek redress here have the requisite domestic effects necessary to provide subject matter jurisdiction over this case. Plaintiffs argue that the jurisdic-

tional nexus is provided solely by the global nature of the defendants' conduct." *Empagran I*, 2001 WL 761360, at *3, *quoted at* Appellees' Br. 4. Appellees also point to their motion to dismiss, which stated that plaintiffs failed to allege that the foreign injuries "arose" from domestic effects, and plaintiffs' response in opposition to the motion to dismiss, which claimed that the "proper focus" for the jurisdictional question is not whether plaintiffs' transactions had effects on domestic commerce, but whether defendants' conduct had such effects. *See* Appellees' Br. 4-5 (discussing Defs.' Mot. to Dismiss (Mar. 6, 2001), *reprinted at* Appellees' App. at 18-21; Pls.' Opp'n to Mot. to Dismiss (Apr. 6, 2001), *reprinted at* Appellees' App. at 27).

None of these statements on which appellees rely is inconsistent with appellants' position, however. First, appellants specifically argued before this court that the District Court erred in finding that they had not established jurisdiction, even under the District Court's more narrow conception of the requisite allegations. The District Court's description of appellants' position, moreover, is consistent with appellants' alternative claim: plaintiffs did not suggest that their foreign injuries had effects on domestic commerce, but rather that the allegedly anticompetitive activity, which created appellants' foreign injuries, could not have succeeded (and therefore injured them) without supracompetitive prices in the United States, *i.e.*, without domestic effects. According to appellants' alternative claim, the "global nature of the defendants' conduct" accounts for the interconnectedness of the domestic effects and the foreign effects, which gave rise to appellants' injury.

Appellees' motion to dismiss seems to misconstrue the alternative claim, which states, not that anticompetitive effects on U.S. commerce were the independent cause of appellants' foreign injury, but rather that these effects comprised a necessary link in creating the foreign injury. Thus, appellants' alternative claim is consistent with the argument in their opposition to the motion to dismiss that the focus should not be on whether plaintiffs' transactions affected domestic commerce. The appropriate question under appellants' alter-

native claim would be whether appellees' anticompetitive conduct had effects in the United States that were necessary to achieve appellants' injury abroad.

Appellants contend, moreover, that because appellees never before asserted that appellants failed to satisfy Federal Rules of Civil Procedure Rule 8, in spite of the fact that appellants argued their alternative claim before the District Court, this court, and the Supreme Court, appellees have waived this argument. *See* Appellants' Br. 4-7. Appellants point to *Lennon v. U.S. Theatre Corp.*, 920 F.2d 996, 1000 (D.C. Cir. 1990), which noted that a party's failure to challenge the absence of a necessary pleading under Federal Rules of Civil Procedure Rule 8 "in all likelihood waive[s] any waiver defense that [the party's] omission might otherwise have created." More importantly, appellants submit that because they raised the alternative claim at every stage in the litigation, appellees' silence on this point demonstrates that appellees understood the complaint to allege the alternative claim. *See* Appellants' Br. 4, 6-7.

Appellants rely on *Arent v. Shalala*, 70 F.3d 610, 618 (D.C. Cir. 1995), which held that "lack of specificity is not fatal [to a complaint] so long as the defendant is given 'fair notice' of the plaintiff's claim." In *Arent*, appellants challenged final regulations on nutritional labeling promulgated by the Food and Drug Administration. This court found that although appellants' amended complaint was ambiguous and the record was unclear as to which of two possible claims appellants intended to include, the amended complaint was sufficient because the Food and Drug Administration "had fair notice of the interpretation of appellants' amended complaint for which appellants . . . argue[d] on appeal." *Id.* at 619, *quoted at* Appellants' Br. 7. Appellants submit that this is an easier case than *Arent*, because even if this court concludes that the complaint is ambiguous, the record is clear: appellants intended the complaint to allege their alternative claim, and argued the alternative claim before the District Court, this court, and the Supreme Court. At the status conference before the District Court, for example, appellants argued at length that a global market for bulk vitamins existed and that

control of the U.S. market was necessary for the conspiracy to succeed. *See* Tr. of Status Conference (May 23, 2001), *reprinted at* Appellants' App. at 67-71. Thus, appellants submit that appellees received ample notice of the alternative claim, but nevertheless failed to contest whether it was properly pleaded. Appellees' brief is silent on appellants' reliance on *Arent*; appellees assert only that they did not waive any arguments at the status conference because they were pressed for time. *See* Appellees' Br. 5 n.4.

Appellants are correct that appellees' failure to challenge the complaint under Rule 8, even after the alternative claim was repeatedly argued by appellants, establishes that the complaint sufficiently placed appellees on notice regarding the alternative claim and therefore complied with the Federal Rules. Appellees failed to challenge the alternative claim under Rule 8, not only during the status conference, but also at any subsequent point before the District Court or before this court. Appellees' silence on this point suggests that the complaint adequately placed them on notice regarding the alternative claim.

B. *Whether the Alternative Claim was Preserved*

Appellants argue that they have preserved their alternative claim by advancing it in briefs or oral arguments at every stage in this litigation. *See* Appellants' Br. 4. Appellees counter that appellants waived their alternative claim because they failed to "raise it clearly in the district court." Appellees' Br. 5. But appellees do not explain what exactly was unclear about the way that appellants raised it. In contrast, appellants discussed their argument before the District Court at length. At the status conference, appellants' counsel explained how the global market for bulk vitamins functioned, including that control of the U.S. market was necessary because otherwise arbitrage would destroy supracompetitive pricing. Appellants' counsel stressed that

> [i]f you affected the prices in the United States, you affected the prices around the world, regardless of where you were. . . . That is [ ] where the interconnection in this market comes in. It's not just for-

eign commerce. It's not just United States commerce. It is commerce literally that was held in balance as world commerce by the defendants, and adjustments were made, set and fixed with regard to the world market conditions.

Tr. of Status Conference (May 23, 2001), *reprinted at* Appellants' App. at 71, *quoted at* Appellants' Br. 5. Appellants argue that this discussion before the District Court preserved the issue for appeal. *See* Appellants' Br. 5 n.1.

Appellants point to *Fraternal Order of Police v. United States*, 173 F.3d 898, 902 (D.C. Cir. 1999), which held that presenting a claim in oral argument before the district court "was enough to satisfy the general requirement that an issue on appeal be raised in the trial court." *Fraternal Order of Police* also stressed that "the District Court for the District of Columbia regularly considers arguments raised for the first time at oral argument in deciding dispositive motions." *Id.* Appellees counter that *Fraternal Order of Police* is not on point because appellants did not rely on the alternative claim but rather argued before the District Court that they did not need to establish a nexus between the domestic effects and the foreign injury. *See* Appellees' Br. 5-6. Appellees' attempt to distinguish *Fraternal Order of Police* is unavailing: appellees seem to misconstrue the meaning of an "alternative" claim, which is *alternative* because appellants rely on a different, primary theory.

Appellants also point to their discussion of the alternative claim in their briefs before this court in *Empagran II*, and underscore that the court itself recognized that appellants had raised the alternative claim. *See* Appellants' Br. 6. Indeed, this court stated in *Empagran II*:

In the alternative, appellants claim that their complaint states a viable cause of action even under the District Court's *restrictive view* of FTAIA. Appellants contend that appellees caused injury to purchasers outside of the United States as a result of the anticompetitive effects of price changes and supply shifts in United States commerce. Not only was

> United States commerce directly affected by the worldwide conspiracy, appellants say, but the cartel raised prices around the world in order to keep prices in equilibrium with United States prices in order to avoid a system of arbitrage. Thus, according to appellants, the "fixed" United States prices acted as a benchmark for the world's vitamin prices in other markets. On this view of the alleged facts, appellants claim that the foreign plaintiffs were injured as a direct result of the increases in United States prices even though they bought vitamins abroad.

315 F.3d at 341. Appellants establish that they also preserved the alternative claim before the Supreme Court, by addressing it in their briefs and at oral argument. *See* Appellants' Br. 6.

Appellants argue, moreover, that because appellees never suggested to the District Court or to this court that the alternative claim was waived, they have waived their chance to make such an argument. *See id.* at 6. Appellants are correct; the alternative claim was preserved, because appellants have demonstrated that they consistently raised the claim and appellees do not purport to have argued to this court or the court below that the claim was waived. *See, e.g.*, *United States v. Layeni*, 90 F.3d 514, 522 (D.C. Cir. 1996) ("The government, however, has waived the waiver argument by not raising it.").

C. *Whether this Court Should Remand the Case to the District Court*

The parties (as well as the amici curiae) are in agreement that this court should not remand the case to the District Court before it determines whether the nature of the link alleged by appellants is legally sufficient to trigger application of the FTAIA's domestic-injury exception. Appellants, appellees, and their amici curiae all argue that this is a question of law best resolved by this court in the first instance.

Appellants argue against remand absent further guidance from this court because they read the Supreme Court's decision as contemplating this court's resolution of the legal sufficiency of the complaint. *See* Appellants' Br. 10-11. They argue that this is a question of law and that their proposed course best preserves judicial resources. They also submit that remanding to the District Court without further instruction would leave the trial court "somewhat at sea." *Id.* at 11.

Appellees agree that the sufficiency of any alleged jurisdictional link between domestic effects and foreign injury is a question that "can be answered as a matter of law...." Appellees' Br. 6. Appellees point to *Sniado v. Bank Austria AG*, 378 F.3d 210 (2d Cir. 2004) (per curiam), in which the Second Circuit vacated, in light of *Empagran III*, a prior ruling on remand from the Supreme Court. The court of appeals also decided the question whether the plaintiff's complaint could have alleged the "alternative" theory noted in *Empagran II*, despite the fact that the plaintiff had not previously raised the argument to the district court or to the court of appeals, because the Second Circuit concluded that the plaintiff's "alternative theory ... is purely legal and requires no further development of the record." *See id.* at 213.

The United States and the Federal Trade Commission ("FTC"), amici curiae in support of appellees, also argue against a remand to the District Court in this case because "the issue is purely legal...." U.S. & FTC Amicus Curiae Br. 1. Amici curiae contend that this court's resolution of the question not only would preserve judicial resources but also would prevent harm to the United States in deterring antitrust violations by removing a disincentive to seek amnesty. *See id.* at 1-2.

No party or amici has presented any argument for remanding this case to the District Court. The parties are correct that the Supreme Court seems to have suggested that it would be appropriate for this court to decide the question: "Respondents remain free to ask the Court of Appeals to

consider the [alternative] claim. The Court of Appeals may determine whether respondents properly preserved the argument, and, if so, it may consider it and decide the related claim." *Empagran III*, 124 S. Ct. at 2372. The parties are also correct that the question whether appellants' alternative claim provides a sufficient nexus can be decided as a pure question of law. It should be noted, however, that one circuit has remanded a similar case, in light of *Empagran III*, instructing the district court, "should it deem it necessary or helpful, [to] give the parties the opportunity to present evidence as to whether the alleged anticompetitive conduct's domestic effects were linked to the alleged foreign harm." *BHP New Zealand Ltd. v. UCAR Int'l, Inc.*, 106 Fed. Appx. 138, 2004 WL 1771436, at *2 (3d Cir. 2004), *noted at* Appellees' Br. 6 n.5.

On balance, we agree with the parties that reaching the legal question at this point would not stymie the development of an appropriate record: If the legal argument for the jurisdictional nexus is sufficient to survive a motion to dismiss, the parties will each have an opportunity to develop their case before the trial court. If the legal argument is without merit, then judicial economy supports a ruling by this court in the first instance. Appellees' arguments on the merits are not properly before the court at this juncture, so we will not consider them. These arguments, and the arguments in support of appellants' alternative claim, will be subject to full briefing and oral argument before the court reaches judgment on the alternative claim.

## D. *Motion for Limited Remand*

There is one last matter pending before the court that warrants our attention at this juncture. On August 19, 2004, appellants filed a motion in this court for a limited remand that would permit the District Court to conduct proceedings on issues relating to a $10 million settlement that plaintiffs reached with a subset of the defendants. *See* Pls.-Appellants' Mot. for Limited Remand (Aug. 19, 2004), at 1. The settlement was reached in December 2003, after the court of appeals filed its decision and before the Supreme Court

granted *certiorari*. *See id.* at 3. Appellants submit that the settlement should be approved by the District Court prior to and irrespective of whether the court is ultimately found to have subject matter jurisdiction. *See id.* at 4-6. Appellants contend that permitting this limited remand advances the parties' and potential class members' right to finality. *See id.* at 4-5.

On September 3, 2004, appellees filed an opposition to appellants' motion. *See* Defs.-Appellees' Resp. in Opp'n of Mot. for Limited Remand. Appellees argued that it would be inappropriate for the District Court to oversee a settlement before the question whether the District Court has subject matter jurisdiction over this case is resolved. *See id.* at 3-7. Appellees submit that the limited remand is a poor use of scarce judicial resources. *See id.* at 4-5. Appellees also stress that the limited remand is counter to their interests, because it would force them to expend time and resources in settlement-related proceedings on a claim that may have no jurisdictional basis in U.S. courts. *See id.* at 5.

Appellees are correct that it would be improper for this court to remand the case to the District Court to oversee settlement proceedings prior to any determination whether the District Court actually has subject matter jurisdiction. Appellants' proposal to permit a limited remand for settlement proceedings before it is determined whether the District Court has subject matter jurisdiction is in tension with the basic tenets of federal jurisdiction. *See Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1981) ("Jurisdiction is, of necessity, the first issue for an Article III court. The federal courts are courts of limited jurisdiction, and they lack the power to presume the existence of jurisdiction in order to dispose of a case on any other grounds.").

### III. CONCLUSION

In due course, the court will issue an order instructing the parties to submit full merits briefs on the question whether the nature of the alleged link between foreign injury and domestic effects is legally sufficient to trigger application of

the FTAIA's domestic-injury exception. The order will also set a date for oral arguments in this case.