# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 20, 2005          Decided June 28, 2005

No. 01-7115

EMPAGRAN S.A. *ET AL.*,
APPELLANTS

v.

F. HOFFMANN-LAROCHE, LTD. ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 00cv01686)

———

*Thomas C. Goldstein* argued the cause for the appellants. *Amy Howe*, *Michael D. Hausfeld*, *Paul T. Gallagher* and *Brian A. Ratner* were on brief.

*Stephen M. Shapiro* argued the cause for the appellees. *Bruce L. Montgomery, Arthur F. Golden, Stephen Fishbein, John M. Majoras, Daniel H. Bromberg, Lawrence Byrne, D. Stuart Meiklejohn, Stacey R. Friedman, Tyrone C. Fahner, Stephen M. Shapiro, Andrew S. Marovitz, Jeffrey W. Sarles, Michael L. Denger, Miguel A. Estrada, Laurence T. Sorkin, Roy L. Regozin, Paul P. Eyre, Ernest E. Vargo, Donald I. Baker, W. Todd Miller, Alice G. Glass, Peter E. Halle, Kevin R. Sullivan, Peter M. Todaro, Jeffrey S. Cashdan, Thomas M. Mueller, Michael O. Ware, James R. Weiss, Aileen Meyer, Sutton Keany, Bryan*

*Dunlap, Martin Frederic Evans, Gary W. Kubek, Karen N. Walker, Moses Silverman* and *Mark Riera* were on brief.

*Steven J. Mintz*, Attorney, United States Department of Justice, argued the cause for *amici curiae* United States of America and Federal Trade Commission in support of the appellees. *Robert H. Pate, III*, Assistant Attorney General, *Robert B. Nicholson*, Attorney, United States Department of Justice, and *John D. Graubert*, Acting General Counsel, Federal Trade Commission, were on brief. *Adam D. Hirsh*, Attorney, United States Department of Justice, entered an appearance.

*Homer E. Moyer, Jr.* and *Alan I. Horowitz* were on brief for *amicus curiae* Government of Canada in support of the appellees.

*Ernest Gellhorn* was on brief for *amici curiae* Federal Republic of Germany *et al.* in support of the appellees.

*Mark S. Popofsky*, *Michael D. Blechman*, *Saul P. Morgenstern* and *Peter A. Barile, III* were on brief for *amicus curiae* United States Council for International Business in support of the appellee.

Before: EDWARDS, HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The appellants, foreign corporations that purchased vitamin products outside of the United States for distribution in foreign countries from the appellee foreign manufacturers, brought this action asserting, *inter alia*, price fixing in violation of the Sherman Act, 15 U.S.C. § 1.[1] The district court dismissed the Sherman Act claim

---

[1]This section provides in relevant part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is

for lack of subject matter jurisdiction under the Foreign Trade Antitrust Improvements Act (FTAIA), which makes the Sherman Act inapplicable to conduct involving non-import foreign trade or commerce with one exception: when "such conduct has a direct, substantial, and reasonably foreseeable effect" on *domestic* trade or commerce and "such effect gives rise to a claim under [the Sherman Act]."[2] *Empagran S.A. v. F. Hoffman-La Roche, Ltd.*, 2001 WL 761360, at 2 (2001). This court in a divided opinion reversed the district court, reasoning that "where the anticompetitive conduct has the requisite harm on United States commerce, FTAIA permits suits by foreign

---

declared to be illegal."

[2]The FTAIA provides in full:

Sections 1 to 7 of this title shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless--

(1) such conduct has a direct, substantial, and reasonably foreseeable effect–

(A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or

(B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and

(2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.

If sections 1 to 7 of this title apply to such conduct only because of the operation of paragraph (1)(B), then sections 1 to 7 of this title shall apply to such conduct only for injury to export business in the United States.

15 U.S.C. § 6a.

plaintiffs who are injured solely by that conduct's effect on foreign commerce." *Empagran S.A. v. F. Hoffman-La Roche, Ltd.*, 315 F.3d 338, 341 (D.C. Cir. 2003). The United States Supreme Court granted *certiorari* and vacated this court's decision concluding that under the FTAIA the Sherman Act does not apply where "price-fixing conduct significantly and adversely affects both customers outside the United States and customers within the United States, but the adverse foreign effect is independent of any adverse domestic effect." *F. Hoffman-La Roche, Ltd. v. Empagran S.A.*, 124 S. Ct. 2359, 2366 (2004). The Supreme Court remanded to this court, however, to assess the appellants' alternate theory for Sherman Act liability, namely, that "because vitamins are fungible and readily transportable, without an adverse domestic effect (*i.e.,* higher prices in the United States), the sellers could not have maintained their international price-fixing arrangement and respondents would not have suffered their foreign injury." 124 S. Ct. at 2372.[3] We reject the appellants' alternate theory and conclude that we are without subject-matter jurisdiction under the FTAIA.[4]

While the FTAIA excludes from the Sherman Act's reach most anti-competitive conduct that causes only foreign injury, it creates exceptions for conduct that "significantly harms imports, domestic commerce, or American exporters." *Empagran*, 124 S. Ct. at 2363. At issue is the "domestic-injury

---

[3]The Supreme Court also directed us as a threshold matter to determine whether the appellants preserved their alternative theory for appeal. 124 S. Ct. at 2372. In a decision issued November 2, 2004, we concluded that they have. *See S.A. v. F. Hoffman-La Roche, Ltd.*, 388 F.3d 337, 340-44 (D.C. Cir. 2004).

[4]In light of our decision on FTAIA subject matter jurisdiction, we need not consider the appellees' alternative argument that the appellants lack standing.

exception" of section 6a(2), which we conclude, as counsel for the United States argued, applies in only limited circumstances.

The appellees suggest that the exception applies only to injuries that arise in U.S. commerce, thus describing its reach by the situs of the transaction and resulting injuries rather than by the situs of the effects of the allegedly anti-competitive conduct giving rise to the appellants' claims. This interpretation has no support from the text of the statute, which expressly covers conduct involving "trade or commerce with foreign nations." 15 U.S.C. § 6a(1)(A). In addition, the legislative history makes clear that the FTAIA's "domestic effects" requirement "does not exclude all persons injured abroad from recovering under the antitrust laws of the United States." H.R. Rep. No. 97-686, at 17a. The appellants need only demonstrate therefore that the U.S. effects of the appellees' allegedly anti-competitive conduct "g[a]ve rise to" their claims.

During oral argument, counsel for the United States identified three decisions with factual scenarios that, in its view, satisfy the narrow "domestic-injury exception": *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308 (1978); *Industria Siciliana Asfalti, Bitumi,S.p.A. v. Exxon Research & Eng'g Co.*, 1977 WL 1353 (S.D.N.Y. 1977); and *Caribbean Broad. Sys. v. Cable & Wireless PLC*, 148 F.3d 1080 (D.C. Cir. 1998). Counsel nonetheless argued, and we agree, that each of these cases is distinguishable. For example, in *Pfizer*, which involved a conspiracy that operated both domestically and internationally, the Supreme Court held "only that a foreign nation otherwise entitled to sue in our courts is entitled to sue for treble damages under the antitrust laws to the same extent as any other plaintiff," 434 U.S. at 320, without addressing the requisite causal relationship between domestic effect and foreign injury. In *Industria*, the foreign injury was "inextricably bound up with the domestic restraints of trade," 1977 WL 1353, at *11, because a reciprocal tying agreement effected the exclusion of the

American rival of one defendant, resulting in higher consumer prices. Finally, in *Caribbean* this court expressly found the FTAIA permitted a Sherman Act claim that involved solely foreign injury. There the plaintiff broadcaster, Caribbean, which operated an FM radio station based in the British Virgin Islands, filed an antitrust action against a competing FM radio station and its joint venturer, alleging that the defendants had violated the Sherman Act by preserving the defendant station's radio broadcast monopoly in the eastern Caribbean region through, *inter alia*, misrepresentations to its advertisers regarding the station's broadcasting reach. While the court expressly addressed only how Caribbean's allegations satisfied subsection 1 of the FTAIA (finding the requisite effect of the defendants' conduct on domestic trade or commerce), it is clear from the court's opinion that Caribbean's allegations satisfied subsection 2 as well. The domestic effect the court found was that U.S. advertisers paid the defendant station excessive prices for advertising. It was this effect of the defendants' monopolizing conduct—forcing U.S. businesses to pay for advertising on the defendant station—that caused Caribbean to lose revenue because it was unable to sell advertising to the same U.S. businesses. *See* 148 F.3d at 1087.

The appellants' theory in a nutshell is as follows:

Because the appellees' product (vitamins) was fungible and globally marketed, they were able to sustain super-competitive prices abroad only by maintaining super-competitive prices in the United States as well.[5] Otherwise, overseas purchasers would have purchased bulk vitamins at lower prices either

---

[5] The appellants assert the appellees accomplished this equipoise both by fixing a single global price for the vitamins and by creating barriers to international vitamin commerce in the form of market division agreements that prevented bulk vitamins from being traded between North America and other regions.

directly from U.S. sellers or from arbitrageurs selling vitamins imported from the United States, thereby preventing the appellees from selling abroad at the inflated prices. Thus, the super-competitive pricing in the United States "gives rise to" the foreign super-competitive prices from which the appellants claim injury.

*See* Appellants' Br. at 15-21. The appellants paint a plausible scenario under which maintaining super-competitive prices in the United States might well have been a "but-for" cause of the appellants' foreign injury. As the appellants acknowledged at oral argument, however, "but-for" causation between the domestic effects and the foreign injury claim is simply not sufficient to bring anti-competitive conduct within the FTAIA exception. The statutory language—"gives rise to"—indicates a direct causal relationship, that is, proximate causation, and is not satisfied by the mere but-for "nexus" the appellants advanced in their brief. *See* Appellants Br. at 22-23. This interpretation of the statutory language accords with principles of "prescriptive comity"—"the respect sovereign nations afford each other by limiting the reach of their laws," *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 817 (1993) (Scalia, J., dissenting)—which require that we "ordinarily construe[] ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations." *F. Hoffman-La Roche, Ltd.*, 124 S. Ct. at 2366. To read the FTAIA broadly to permit a more flexible, less direct standard than proximate cause would open the door to just such interference with other nations' prerogative to safeguard their own citizens from anti-competitive activity within their own borders. *See id.* at 2367 ("Why should American law supplant, for example, Canada's or Great Britain's or Japan's own determination about how best to protect Canadian or British or Japanese customers from anticompetitive conduct engaged in [in] significant part by Canadian or British or Japanese or other foreign companies?").

Applying the proximate cause standard, we conclude the domestic effects the appellants cite did not give rise to their claimed injuries so as to bring their Sherman Act claim within the FTAIA exception. While maintaining super-competitive prices in the United States may have facilitated the appellees' scheme to charge comparable prices abroad, this fact demonstrates at most but-for causation. It does not establish, as in the cases the United States cites, that the U.S. effects of the appellees' conduct—i.e., increased prices in the United States—proximately caused the foreign appellants' injuries. Nor do the appellants otherwise identify the kind of direct tie to U.S. commerce found in the cited cases. Although the appellants argue that the vitamin market is a single, global market facilitated by market division agreements so that their injuries arose from the higher prices charged by the global conspiracy (rather than from super-competitive prices in one particular market), they still must satisfy the FTAIA's requirement that the U.S. effects of the conduct give rise to their claims. The but-for causation the appellants proffer establishes only an indirect connection between the U.S. prices and the prices they paid when they purchased vitamins abroad. *Cf. Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d. Cir. 2004). Under the appellants' theory, it was the foreign effects of price-fixing outside of the United States that directly caused, or "g[a]ve rise to," their losses when they purchased vitamins abroad at super-competitive prices. That the appellees knew or could foresee the effect of their allegedly anti-competitive activities in the United States on the appellants' injuries abroad or had as a purpose to manipulate United States trade does not establish that "U.S. effects" proximately caused the appellants' harm. The foreign injury caused by the appellees' conduct, then, was not "inextricably bound up with . . . domestic restraints of trade," as in *Industria* and *Caribbean Broadcasting*. *See Empagran*, 124 S. Ct. at 2370. It was the foreign effects of price-fixing outside of the United States that directly caused or "g[a]ve rise to" the

appellants' losses when they purchased vitamins abroad at super-competitive prices.

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*