Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S. App. D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 15, 2005          Decided June 10, 2005

No. 05-5009

U.S. INTERNATIONAL TRADE COMMISSION,
APPELLEE

v.

ASAT, INC.,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 04mc00395)

———

*Matthew J. Brigham* argued the cause for appellant. With him on the briefs was *Thomas J. Friel, Jr.* and *Lori R.E. Ploeger*.

*Wayne W. Herrington*, Counsel, U.S. International Trade Commission, argued the cause for appellee. On the brief were *Timothy P. Monaghan*, Attorney, and *Neal J. Reynolds*, Acting Assistant General Counsel.

*Louis S. Mastriani* and *Scott A. Lasher* were on the brief for *amici curiae* CARSEM (M) SDN BHD, et al. in support of appellee.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This is an appeal from an order granting a petition of the United States International Trade Commission for enforcement of its subpoena for the production of documents under section 333(b) of the Tariff Act of 1930, 19 U.S.C. § 1333(b) (2000). ASAT, Inc. challenges enforcement on the grounds that the district court lacked subject matter and personal jurisdiction, was not the proper venue, and, alternatively, erred by refusing to review whether ASAT, Inc. controlled the subpoenaed documents that are in its parent companies' possession. Although we hold that the district court had subject matter jurisdiction and was a proper venue, and that because section 333(b) of the Tariff Act of 1930 authorizes nationwide service of process, it also had personal jurisdiction over ASAT, Inc., we nonetheless reverse the order enforcing the administrative subpoena because the record lacks sufficient evidence to determine, as a matter of law, that ASAT, Inc. controls, and therefore is able to produce, the subpoenaed documents.

**I.**

The subpoena underlying this appeal was issued during an investigation by the United States International Trade Commission under section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337, of whether the importation of certain encapsulated integrated circuits by Carsem, Inc., Carsem (M) Sdn Bhd, and Carsem Semiconductor Sdn Bhd (collectively

"Carsem") infringes three United States patents owned by Amkor Technology, Inc. ("Amkor"). *See In Matter of Certain Encapsulated Integrated Circuit Devices & Products Containing Same*, Inv. No. 337-TA-501 (U.S.I.T.C.). At the request of Carsem, an Administrative Law Judge ("ALJ") issued three identical subpoenas seeking documents and depositions from ASAT, Inc., ASAT Limited, and ASAT Holdings Ltd., non-parties to the investigation that allegedly have documents relative to Carsem's likely affirmative defenses. ASAT, Inc. is a California corporation with headquarters in Pleasanton, California. It is a wholly-owned subsidiary of both ASAT Limited, which is a Hong Kong corporation with a principal office in Hong Kong, and ASAT Holdings Ltd., which is a Cayman Islands holding corporation with a principal office in Hong Kong. ASAT Limited is itself also a wholly-owned subsidiary of ASAT Holdings Ltd. ASAT, Inc.'s principal activities are the selling, marketing, and provision of customer services for its parent companies' integrated circuits in the United States. Carsem served each subpoena on ASAT, Inc. in California. The subpoena *duces tectum* requested a range of technical and legal documents relating to, among other things, the prosecution and licensing of two patents - one that is assigned to ASAT Limited and one that is assigned to Amkor.

ASAT Limited and ASAT Holdings moved to quash the subpoenas for improper service, and the ALJ granted the motion because Carsem "ha[d] not shown a lack of corporate separateness among the three ASAT entities" and ASAT, Inc. was not a registered agent to accept service on their behalf. ASAT, Inc. also objected to its subpoena on various grounds, including that it did not have possession, custody or control of, or the legal right to obtain, certain documents because they were in the possession of ASAT Limited or ASAT Holdings Ltd. The ALJ, noting that ASAT, Inc. is "the exclusive distributor of ASAT Holdings services in the United States," found that there

was a "close business relationship between the three ASATs" and ruled that "ASAT Inc. is deemed to be in control of documents held by ASAT Limited and ASAT Holdings."

After ASAT, Inc. partially complied with the subpoena but advised Carsem that it was unable to obtain the relevant documents from ASAT Limited and ASAT Holdings Ltd. relating to the cross-licensing arrangement between ASAT Holdings Ltd. and Amkor on the patents in question, Carsem moved to certify to the Commission a request for judicial enforcement of the subpoena. The ALJ agreed, stating that "the information sought in the subpoena relates to communications between ASAT and Amkor and the prosecution of the ASAT and Amkor patents that is relevant to Carsem's affirmative defense" and "for which there is no other source." The ALJ understood ASAT Inc.'s "flat refusal to comply with the subpoena . . . [as] a showing of contempt for the Commission's discovery processes." The Commission granted the ALJ's request, and, on August 11, 2004, it filed a petition in the district court for the District of Columbia to enforce the subpoena. The district court granted the petition, ruling that it had jurisdiction and that none of ASAT, Inc.'s substantive challenges to the administrative subpoena fell within the court's limited scope of review. *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 335 F. Supp. 2d 67 (D.D.C. 2004). The district court stayed its enforcement order, which is a final appealable order, *see FTC v. Texaco, Inc.*, 555 F.2d 862, 873 n.21 (D.C. Cir. 1977) (en banc), and ASAT, Inc. now appeals.

## II.

Section 333(b) of the Tariff Act provides that the Commission may require the "attendance of witnesses and the production of such documentary evidence . . . from any place in the United States at any designated place of hearing." 19 U.S.C. § 1333(b). Significantly, the subsection further provides:

5

> [I]n case of disobedience to a subpoena the commission may invoke the aid of any district or territorial court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence and such court *within the jurisdiction of which such inquiry is carried on* may, in case of contumacy or refusal to obey a subpoena issued to any corporation or other person, issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered or to give evidence touching the matter in question.

*Id.* (emphasis added).  The question whether the district court has subject matter jurisdiction over an action is generally distinct from the question whether it was a proper venue in which the action could be filed.  *See Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-68 (1939); WRIGHT, MILLER, & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3801 (2d ed. & Supp. 2005); *cf. Tex. Mun. Power Agency v. EPA*, 89 F.3d 858, 867 (D.C. Cir. 1996); *New Mexico ex rel. Energy & Minerals Dep't v. U.S. Dep't of Interior*, 820 F.2d 441, 446 (D.C. Cir. 1987).  The former addresses the power of the court to adjudicate, while the latter addresses the place where that judicial authority may be exercised and focuses on the convenience to the parties of the location of the lawsuit.  *Neirbo*, 308 U.S. at 167-68.  However, in the context of section 333(b) of the Tariff Act, the two inquiries merge.  Under the analysis adopted in *FEC v. Committee to Elect Lyndon LaRouche*, 613 F.2d 849, 856-57 (D.C. Cir. 1979), the district court's subject matter jurisdiction under section 333(b) turns on whether the Commission's inquiry was "carried on" in the judicial district in which the Commission filed its enforcement action, 19 U.S.C. § 1333(b).  In this instance, the court is required to determine "(1) whether the District of Columbia bore

a sufficiently 'reasonable relation to the subject matter of the investigation' to qualify as a place where the inquiry was carried on, and (2) whether the [Commission's] choice of this jurisdiction as its place of inquiry exceeded 'the bound of reasonableness.'" *LaRouche*, 613 F.2d at 856-57 (quoting *FTC v. MacArthur*, 532 F.2d 1135, 1140 (7th Cir. 1976)) (internal citation omitted). Because the second criterion resembles a traditional venue analysis that focuses on the convenience of the forum to the parties, *see Neirbo*, 308 U.S. at 168, it may more properly be said that the first *LaRouche* criterion implicates the district court's subject matter jurisdiction, while the second criterion implicates whether that court is a proper venue. Indeed, in light of *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 90 (1998), it may be that section 333(b) is properly viewed not as jurisdictional but as only implicating the district court's remedial power. The court suggested, in dictum, in *United States v. Hill*, 694 F.2d 258, 267 (D.C. Cir. 1982), where there was no enforcement provision in the agency statute at issue, that the general jurisdictional grants in 28 U.S.C. §§ 1331, 1337, 1345 provide the district court with subject matter jurisdiction over actions to enforce administrative subpoenas. However, because it is not so clear that *Steel Co.* is inconsistent with the characterization of similar statutory language in *LaRouche* and *FTC v. Browning*, 435 F.2d 96 (D.C. Cir. 1970), this court has no occasion to adopt a different analysis. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc).

ASAT, Inc. contends that the phrase "such court within the jurisdiction of which such inquiry" should be interpreted to include only the location of the "attendance of witnesses and the production of such documentary evidence," 19 U.S.C. § 1333(b), and it should not be understood to encompass the broader investigation into Carsem's alleged infringing practices. While the use of the terms "investigation" and "inquiry" in

section 333 could suggest that the two terms are not synonymous, *but see FTC v. Jim Walter Corp.*, 651 F.2d 251, 254 (5th Cir. 1981), *abrogated on other grounds by Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982), ASAT, Inc.'s interpretation ignores the Commission's efforts under section 333(b) to obtain the "attendance of witnesses and the production of such documentary evidence" that occur outside of the jurisdiction where the subpoena is directed. ASAT, Inc. provides no justification for such a confined construction of what constitutes the Commission's inquiry, and our caselaw indicates that the place where the subpoena is returnable is not determinative of the place of inquiry, *see LaRouche*, 613 F.2d at 857 n.7. Thus, ASAT, Inc.'s contention that the Northern District of California is the only district that has jurisdiction to enforce the Commission's subpoena because that is the location where the Commission sought the production of documents must fail.

Instead "[t]he test whether the Commission is undertaking an inquiry in a particular place is whether [the] place and the activities occurring there bear a reasonable relation to the subject matter of the investigation." *MacArthur*, 532 F.2d at 1140. Among the factors relevant to this determination are: the place where the Commission held its hearing, the place where it made the decision to authorize the investigation, the place where the subpoenas were issued, the place where its correspondence emanated, the place where the Commission determined that unlawful actions had occurred, the location of the documents and witnesses, and the location of the headquarters of the subpoenaed company. *See LaRouche*, 613 F.2d at 857; *MacArthur*, 532 F.2d at 1140; *Browning*, 435 F.2d at 99. This test is based on our precedent, and it is consistent with the Commission's broad investigatory powers, *see* 19 U.S.C. §§ 1332, 1337; *cf. MacArthur*, 532 F.2d at 1140.

ASAT, Inc. attempts to define the inquiry narrowly and to minimize the Commission's activities within the District of Columbia relating to it, but the district court had subject matter jurisdiction because "the District of Columbia, where the Commission maintains its headquarters, was the hub of the Commission's investigative activity" of Carsem's importation of certain encapsulated circuits. *LaRouche*, 613 F.2d at 857. Even if we were to ignore, as ASAT, Inc. suggests, that the ALJ's evidentiary hearing regarding Carsem's actions was held in the District of Columbia, the Commission's activities regarding the subpoena at issue were conducted overwhelmingly in the District of Columbia: The subpoena was signed, sealed, and issued in the District of Columbia, the ALJ's rulings on ASAT's motion to quash were issued in the District of Columbia, and the Commission's certification of the subpoena for judicial enforcement occurred in the District of Columbia. Because, as the district court stated, the Commission conducted the "administrative activities essential to the investigation in [the District of Columbia]," *ASAT, Inc.*, 335 F. Supp. 2d at 71, the district court here had subject matter jurisdiction under section 333(b) of the Tariff Act, *see LaRouche*, 613 F.2d at 857; *MacArthur*, 532 F.2d at 1140.

Although these wholly administrative activities may occur in the District of Columbia in most, if not all, Commission inquiries and therefore the district court for the District of Columbia often, if not always, would have subject matter jurisdiction, contrary to ASAT Inc.'s contention, this reality does not rewrite the statute to substitute "the district court for the District of Columbia" in place of "such court within the jurisdiction of which such inquiry is carried on" in section 333(b). Instead, as the Commission notes, it is not required to hold hearings in the District of Columbia. Rather, while the Tariff Act establishes the Commission's principal office in the District of Columbia, 19 U.S.C. § 1331(d), it also authorizes the

Commission to maintain an office in New York, *id.* § 1331(e), and to "prosecute any inquiry necessary to its duties in any part of the United States," *id.* § 1331(d). And, while the district court for the District of Columbia may have subject matter jurisdiction when the Commission conducts its administrative actions here, our precedent is clear that an inquiry can be carried on in more than one place. *See LaRouche*, 613 F.2d at 858 n.9; *Browning*, 435 F.2d at 99 n.7. As long as the factors derived from *LaRouche*, *MacArthur*, and *Browning* so indicate, it properly can be said that an inquiry is carried on in that place, and the district court in that judicial district has subject matter jurisdiction to enforce the Commission's subpoena.

ASAT, Inc.'s challenge to venue focuses on the reasonableness of the Commission's selection of the district court for the District of Columbia to seek enforcement of its administrative subpoena. It makes no statutory claim that, as a non-party to an administrative proceeding, it can determine the place of enforcement. *Cf. Neirbo*, 308 U.S. at 618; *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 445 (1946). Instead, its principal concern is that it is "being forced to defend its actions in remote jurisdictions." Br. of Appellant at 20. However, ASAT, Inc. has demonstrated no actual hardship of defending itself in the District of Columbia, especially since it already had participated in administrative proceedings in the District of Columbia. Hence, it is not difficult to conclude that the Commission's choice of the District of Columbia to enforce the subpoena is well-within the "bound of reasonableness." *LaRouche*, 613 F.2d at 857 (quoting *MacArthur*, 532 F.2d at 1140) (internal quotation marks omitted).

## III.

ASAT, Inc.'s challenge to the personal jurisdiction of the district court is similarly unavailing. Rule 4(k)(1) of the Federal Rules of Civil Procedure, as relevant, authorizes extra-territorial

service of process consistent with the long-arm statute of the state (or the District of Columbia, *see* FED. R. CIV. P. 81(e)) in which the district court sits or as otherwise provided by federal law. The Commission does not maintain that the District of Columbia's long-arm statutes, e.g., D.C. CODE ANN. §§ 13-423, 13-334 (2001), authorized service of process on ASAT, Inc. in California, but it instead contends that section 333(b) of the Tariff Act, which permits enforcement of Commission subpoenas by district or territorial courts "within the jurisdiction of which such inquiry is carried on," 19 U.S.C. § 1333(b), authorizes nationwide service of process in actions to enforce Commission subpoenas.

On two occasions the court has confronted identical or strikingly similar language in other statutes and concluded that Congress intended to imply nationwide service of process. In *Browning*, the court interpreted the identical language of section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, and held that:

> by granting the power to enforce subpoenas only to those district courts 'within the jurisdiction of which such inquiry is carried on,' Section 9 so limits the place of suit for enforcement of Federal Trade Commission subpoenas as to require an implied grant of authority for extra-territorial service of process in order to effectuate the purpose of the regulatory scheme.

*Browning*, 435 F.2d at 100. Similarly, in *LaRouche*, the court held that "the reasoning of the *Browning* decision [was] equally applicable" to "virtually identical" language in the Federal Election Campaign Act of 1971, 613 F.2d at 659, 862, where Congress had limited jurisdiction for actions to enforce Federal Election Commission subpoenas to district courts "within the jurisdiction of which any inquiry is being carried on," 2 U.S.C.

§ 437d(b).

Thus, with such similar statutory language in the Tariff Act and the Commission's nationwide jurisdiction to conduct investigations, *Browning* and *LaRouche* compel the conclusion that nationwide service of process exists for subpoena enforcement actions under section 333(b) of the Tariff Act. ASAT, Inc. contends, however, that the Supreme Court's decision in *Omni Capital Int'l v. Rudolf Wolff & Co, Ltd.*, 484 U.S. 97 (1987), alters this analysis. In *Omni Capital*, the Court held that the Commodity Exchange Act did not authorize nationwide service of process for private causes of action under that statute. That decision, however, does not undermine the Commission's position that the Tariff Act provides nationwide service of process for subpoena enforcement actions.

First, in *Omni Capital*, the Supreme Court found it significant that although the Commodity Exchange Act's provision authorizing a private cause of action was silent as to service of process, other enforcement provisions in the statute expressly provided for nationwide service of process. *Id.* at 106. With the Commodity Exchange Act, all Congress had to do was use the same language it had used in other sections within the same statute to indicate its desire for nationwide service of process; its failure to do so was strong evidence of its intent not to authorize nationwide service of process. *See id.* at 106-07. The same cannot be said of the Tariff Act, where Congress has been completely silent as to service of process. Silence throughout the statute is weaker evidence of congressional intent to preclude nationwide service of process than in *Omni Capital* because there is no indication that Congress considered and rejected nationwide service of process for actions under section 333(b). While *Omni Capital* demonstrates that Congress knows how to provide for nationwide service of process expressly and its failure to do so here counsels against implying nationwide

service of process lightly, such express language is unnecessary when it is clear, as discussed below, that Congress would have desired nationwide service of process to effectuate the underlying statute's purpose.

Second, *Omni Capital* involved a private cause of action, as opposed to agency enforcement proceedings, as in *Browning*, *LaRouche,* and the instant case. The Commission maintains this distinction is important because without nationwide service of process, "Congress would have provided the [district] [c]ourt with the authority to hear the enforcement proceeding but not the power to enforce the subpoena in question." Br. of Appellee at 25. For example, the Commission states that the lack of nationwide service of process would frustrate its congressionally mandated purpose of conducting nationwide investigations, *see* 19 U.S.C. §§ 1332, 1337, because the District of Columbia was the only place where the inquiry was carried on in this matter and therefore the only place that it could file an action to enforce its subpoena under section 333(b). ASAT, Inc. responds that so long as the subpoena seeks documents in a location other than the place of hearing, there will always be multiple places where the inquiry is carried on. Although it is true that the Commission's inquiry could be carried on in more than one place, *see LaRouche*, 613 F.2d at 858 n.9; *Browning*, 435 F.2d at 99 n.7, that does not mean that in every instance an inquiry will be carried on in multiple places or that the inquiry will be carried on in the place where the subpoenaed documents are located. This is so because the location of the subpoenaed documents, even if it is also the place where the subpoena is returnable, may not be a place of inquiry under the factors derived from *LaRouche*, *MacArthur*, and *Browning*. *See, e.g, Jim Walter Corp.*, 651 F.2d at 255.

We conclude, therefore, that it is necessary to imply nationwide service of process for actions to enforce Commission

subpoenas under section 333(b) of the Tariff Act because there otherwise could be a gap in the Commission's enforcement regime where no judicial district could enforce a Commission subpoena without the party voluntarily submitting to the court's jurisdiction. However, to the extent the Commission justifies nationwide service of process as necessary to avoid having to go from judicial district to judicial district to enforce its subpoenas against recalcitrant witnesses or reluctant document producers, that contention erroneously presupposes that going from judicial district to judicial district, although inefficient and inconvenient, would result in the enforcement of every Commission subpoena. In any event, in *Hill*, 694 F.2d at 269, the court suggested that policy arguments regarding the most efficient or convenient enforcement of Commission subpoenas are best addressed to Congress. *But see MacArthur*, 532 F.2d at 1141.

Finally, relying on the Supreme Court's statement in *Omni Capital* that it "would consider it unwise for a court to make its own rule authorizing service of summons," 484 U.S. at 109, ASAT, Inc. contends that the Court disapproved of implying nationwide service of process. The Supreme Court, however, made that statement after concluding that the Commodity Exchange Act did not impliedly authorize nationwide service of process and while discussing whether "the federal courts should act to fill the 'interstices in the law inadvertently left by legislative enactment' by creating their own rule authorizing service of process." *Id.* at 108 (quoting *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 431-32 (5th Cir. 1986)). Relying on our precedent, we have determined that Congress impliedly authorized nationwide service of process for subpoena enforcement actions under section 333(b) of the Tariff Act, and therefore we have located the "legislative grant of authority [that] is necessary." *Id.* at 109 (citing *Georgia v. Pa. R.R. Co.*, 324 U.S. 439, 467-68 (1945)).

Consequently, nothing in *Omni Capital* alters our conclusion that section 333(b) of the Tariff Act impliedly authorizes nationwide service of process in actions to enforce the Commission's subpoenas.

**IV.**

ASAT, Inc.'s final contention is that even if the district court had jurisdiction and was a proper venue for this enforcement action, the subpoena still should not be enforced because ASAT, Inc. lacks control of the subpoenaed documents. This court typically reviews a district court's decision to enforce an administrative subpoena for abuse of discretion. *See, e.g.*, *FTC v. GlaxoSmithKline*, 294 F.3d 141, 146 (D.C. Cir. 2002). However, because ASAT, Inc. contends the district court applied the wrong legal standard, our review is *de novo*. *Cf. In Re Sealed Case*, 146 F.3d 881, 883 (D.C. Cir. 1998). Because ASAT Inc.'s challenge to the Commission's authority requires the court to address only a question of law – namely whether the ALJ's findings of fact are sufficient to give rise to a reasonable inference that ASAT, Inc. had control of the subpoenaed documents – a remand to the district court is unnecessary. *See, e.g.*, *Empagran S.A. v. F. Hoffman-LaRoche*, Ltd., 388 F.3d 337, 345 (D.C. Cir. 2004).

In a series of cases the Supreme Court has limited the district court's role in enforcing an administrative subpoena, beginning with *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943), and *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 209 (1946). Most relevantly, in *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), in the context of the Federal Trade Commission's investigatory powers to require reports, the Supreme Court confined the judicial role to determining whether "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Id.* at 652-53; *see also United*

15

*States v. Powell*, 379 U.S. 48, 57-58 (1964). With this instruction, this court has held, in light "of the important governmental interest in the expeditious investigation of possible unlawful activity," that the district court's role is "strictly limited." *Texaco,* 555 F.2d at 872. The court has explained, however, that "[a]lthough the investigative powers of regulatory agencies are broad, they are not unlimited, and are subject to judicial review '[t]o protect against mistaken or arbitrary orders.'" *In re FTC Line of Bus. Report Litig.*, 595 F.2d 685, 702 (D.C. Cir. 1978) (quoting *Morton Salt*, 338 U.S. at 640); *see also United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995); *Burlington N. Ry. Co. v. Office of Inspector Gen.*, 983 F.2d 631, 638 (5th Cir. 1993); *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450 (9th Cir. 1989); *cf. Univ. Medicine & Dentistry N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003). *But see United States v. Am. Target Adver., Inc.*, 257 F.3d 348, 354 (4th Cir. 2001). *See generally EEOC v. United Airlines, Inc*., 287 F.3d 643 (7th Cir. 2002).

ASAT, Inc. argued both in the district court and in this court that it does not have control over the subpoenaed documents and consequently, "[e]ven a deferential review of an ALJ finding requires an analysis of whether the administrative subpoena 'transcend[s] the agency's investigatory power.'" Br. of Appellant at 23 (quoting *In re FTC Line of Bus. Report Litig.*, 595 F.2d at 703). The district court, interpreting its limited role in subpoena enforcement proceedings, refused "to revisit the ALJ's findings" that ASAT, Inc. had "control over the documents in the possession of its corporate relatives." *ASAT, Inc.*, 335 F. Supp. 2d at 72. However, the Commission does not have authority under its regulations to subpoena documents from ASAT, Inc. that are beyond ASAT, Inc.'s control, *see* 19 C.F.R. §§ 210.30(a)(1), .32(b); *cf.* FED. R. CIV. P. 34(a)(1), and, of course, the Commission is bound by its regulations, *see, e.g.*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267

(1954); *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005). Although the Supreme Court has circumscribed the district court's authority in proceedings to enforce administrative subpoenas, the Court has not gone so far as to preclude the district court from examining whether the Commission exceeded its authority in light of ASAT, Inc.'s challenge to the ALJ's determination that it had control of the subpoenaed documents.

The parties agree that *Camden Iron & Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438 (D.N.J. 1991), sets forth the applicable grounds for finding control of documents. "'Control' is defined as the legal right, authority or ability to obtain documents upon demand." *Id.* at 441; *see also SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000); WRIGHT, MILLER & COOPER, 8A FEDERAL PRACTICE & PROCEDURE § 2210. *Camden Iron* indicates that courts have concluded that a subsidiary corporation, like ASAT, Inc., has the requisite control of documents that are in a parent company's possession where:

> (1) the alter ego doctrine . . . warranted 'piercing the corporate veil';
> (2) the subsidiary was an agent of the parent in the transaction giving rise to the lawsuit;
> (3) [t]he relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation;
> (4) [t]here is access to documents when the need arises in the ordinary course of business; and
> (5) [the] subsidiary was [a] marketer and servicer of the parent's product (aircraft) in the United States.

138 F.R.C. at 441-42 (citing *Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*, 839 F.2d 131, 140-41 (3d Cir. 1988)). It is the

Commission's burden to establish that ASAT, Inc. has control of the subpoenaed documents. *See id.* at 441; *see also Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1452.

The parties do not dispute that the subpoenaed documents are not in ASAT, Inc.'s possession or custody, but instead are possessed by one of ASAT, Inc.'s parent companies. The Commission, like the ALJ, therefore relies on the fourth and fifth grounds from *Camden Irons* to justify enforcing the subpoena. The ALJ ruled that the fourth *Camden Irons* ground applied because of the "close business relationship between the three ASATs." The ALJ also deemed ASAT, Inc. to control the relevant documents under the fifth *Camden Irons* ground because its principal activities on behalf of its parent companies are sales, marketing and the provision of customer services. Although ASAT, Inc.'s opening brief only expressly referenced the fourth ground, as its counsel indicated during oral argument, both the fourth and fifth grounds are challenged here, as they were in the district court, for lack of a nexus between ASAT, Inc.'s ordinary business and the subpoenaed documents. *See* Br. of Appellant at 26-27; Reply Br. of Appellant at 15-17. This is so because the fifth ground essentially describes what ASAT, Inc. does in the ordinary course of business, which is exactly the issue that ASAT, Inc. addressed in its opening brief.

Our review of the record and the ALJ's factual findings do not reveal support for a determination of control as a matter of law. As an initial matter, the ALJ failed to explain the apparent inconsistency between his two findings that "Carsem has not shown a lack of corporate separateness among the three ASAT entities," and that there was such a "close business relationship between the three ASATs" so as to deem ASAT, Inc. as having control of its parent companies' documents. More importantly, neither the ALJ's findings, nor the record, indicate whether ASAT Inc.'s relationship with its parent companies would give

it access to the subpoenaed documents in the ordinary course of business. As noted, the subpoenaed documents principally relate to the prosecution and licensing of patents assigned to ASAT Limited and Amkor. The record only vaguely indicates that ASAT, Inc.'s "principal activities" are "sales, marketing and customer services," and it does not provide any context or explanation for why ASAT, Inc. would have access to or even need documents relating to a patent that it has not been assigned. Simply because the ASATs share some documents during the ordinary course of business is insufficient to deem ASAT, Inc. as having control over the documents underlying the patents at issue. *See Camden*, 138 F.R.D. at 442. While "the particular form of the corporate relationship does not govern whether [a corporation] controls documents," *Credit Bancorp*, 194 F.R.D. at 472, the ALJ's ruling comes close to deeming all wholly owned subsidiaries engaged in sales and servicing as controlling their parent company's documents. Such a result would be impracticable. Instead, there must be a nexus between the subpoenaed documents and ASAT, Inc.'s relationship with its parent companies, taking into account, among other things, ASAT, Inc.'s business responsibilities.

For similar reasons, the fifth *Camden Irons* ground, whose origin is *Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918 (S.D.N.Y. 1984)*,* is also unsupported by the record. In *Cooper Industries*, the wholly owned subsidiary was the distributor and servicer of its parent company's airplanes in the United States, and the subpoenaed documents were service manuals and blueprints related to those airplanes. *Id.* at 919. Because the subpoenaed documents "relate[d] to the planes that [the subsidiary] work[ed] with every day," the district court found it "inconceivable that [the subsidiary] would not have access to these documents and the ability to obtain them for its usual business." *Id.* at 919-20. Here, however, although the nature of the relationship between ASAT, Inc. and its parent

companies may be comparable to the relationship in *Cooper Industries*, the nature of the subpoenaed documents is manifestly different. It is quite conceivable that ASAT, Inc. does not have routine access to these documents because they do not seem to relate directly to its principal activities. As another of the Commission's ALJs recognized in *In the Matter of Certain Optical Disk Controller Chips & Chipsets & Prods. Containing Same*, 2004 WL 2311060 (U.S.I.T.C. Oct. 5, 2004), merely being a "sales and service" subsidiary does not establish the subsidiary's control over documents and information in the parent's possession.

The Commission acknowledges there must be a nexus between the supoenaed documents and ASAT, Inc.'s business responsibilities with its parent companies, maintaining that "ASAT, Inc. could reasonably be expected to be provided access to the documents of its two affiliates during the course of this patent litigation, given that the litigation might clearly and directly impact the ability of ASAT, Inc. to sell and service the products of ASAT Holdings and ASAT Limited in the United States." Br. of Appellee at 14. However, this conclusion stands for the untenable position that any subsidiary whose business life may be threatened has the ability to control its parent's documents, and it appears to be based on pure speculation without support in the record. The same is true for the Commission's position that, "as the exclusive operating arm of ASAT Holdings and ASAT Limited in the United States, ASAT, Inc. has the most direct interest in U.S. patent rights and licenses owned by ASAT Holdings and ASAT Limited of which it may be the beneficiary." *Id.* at 39-40. This may be so, but the record is not there to support such a finding. It remains for the Commission either to instruct the ALJ to reopen the record to allow further evidence and, based on modified findings by the ALJ, to bring a separate petition for enforcement, or to seek the documents directly from ASAT Holdings and ASAT Limited

through the Hague Convention protocols for obtaining documents from foreign corporations, s*ee* FED. R. CIV. P. 4(f) & Advisory Comm. Notes (1993).

Accordingly, we hold that the district court had subject matter and personal jurisdiction and was a proper venue for enforcement of the Commission's subpoena against ASAT, Inc., but the court erred in refusing to review the ALJ's determination regarding control. Because the ALJ's factual findings and the record are insufficient to support a determination as a matter of law that ASAT, Inc. has control of the subpoenaed documents, we reverse the order enforcing the Commission's subpoena.