Opinion for the Court filed by Circuit Judge BROWN.
Dissenting opinion filed by Circuit Judge GRIFFITH.
BROWN, Circuit Judge.
The threshold .issue in this case is whether the United States District Court for the District of Columbia had jurisdiction to enforce subpoenas issued by the National Labor Relations Board (“NLRB”) in the course of the NLRB’s investigation of appellant Cooper Tire & Rubber Company (“Cooper Tire”) for possible contempt of a 1992 cease-and-desist order. We conclude that the district court lacked jurisdiction, and therefore we vacate its order without addressing the other issues Cooper Tire raises.
I
In the late 1980s, activities surrounding an unsuccessful union-organizing campaign at Cooper' Tire’s manufacturing plant in Tupelo, Mississippi, led to an unfair labor *1199 practice charge, an NLRB finding against Cooper Tire, and a cease-and-desist order. Cooper Tire appealed the order to the Fifth Circuit, and the Fifth Circuit ruled in favor of Cooper Tire on several points, narrowing the cease-and-desist order significantly. Cooper Tire & Rubber Co. v. NLRB, 957 F.2d 1245, 1252 & n. 11, 1257 & n. 23 (5th Cir.1992). After a subsequent amendment, the Fifth Circuit’s 1992 judgment barred Cooper Tire from:
(a) Maintaining and enforcing a no-solicitation rule that bans solicitation during any break times or in any break areas ... when both the solicitor and solicitee are on break time, whether informal or scheduled, and are in a break area.
(b) Suspending, discharging, or otherwise disciplining its employees for violations of a no-solicitation rule that bans solicitation during any break times or in any break areas ... when both the solicitor and solicitee are on break time, whether informal or scheduled, and are in a break area.
(c) Creating the impression that its employees’ union activities are under surveillance.
(d) Threatening its employees with reprisals because of their union activities.
(e) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the National Labor Relations Act ....
In 2002, United Steel Workers of America (“the Union”) began a new campaign to unionize employees at Cooper Tire’s Tupe-lo plant. Prior to the election, Cooper Tire showed certain videotapes to its employees. According to Cooper Tire, the employees voted against the Union, 641 to 329. The Union then filed an unfair labor practice charge, complaining that, during the union-organizing campaign, Cooper Tire prohibited leafleting activities inside the parking area of the plant, surveilled pro-union employees as they distributed leaflets, and focused a surveillance camera on these same employees. The NLRB regional office referred the matter to the NLRB’s Contempt Litigation and Compliance Branch (“Contempt Branch”) here in Washington, D.C., for a determination as to whether Cooper Tire had acted in contempt of the 1992 cease-and-desist order. The Contempt Branch then subpoenaed records related to security at the Tupelo plant. Cooper Tire responded to the subpoena, sending the requested records to the Contempt Branch offices in Washington, D.C., and the Contempt Branch subsequently took depositions of several security guards.
In April 2003, the Contempt Branch issued two more subpoenas, seeking the videotapes Cooper Tire showed to employees during the 2002 union-organizing campaign and information surrounding the showing of these tapes. (The subpoenas sought other items, but disputes as to those items have been resolved.) What was unusual about the Contempt Branch’s new subpoenas (and what forms the basis of Cooper Tire’s appeal) is that no party had ever filed a charge asserting any unlawful practice with respect to the showing of the videotapes, and the six-month period for filing such a charge had elapsed. In Cooper Tire’s view, the NLRB was attempting to circumvent the statute of limitations by characterizing the videotapes as a violation of the 1992 cease-and-desist order.
Cooper Tire filed a petition with the NLRB to revoke the subpoenas, and the NLRB denied this petition on October 24, 2003. A few days later, Cooper Tire informed the Contempt Branch that it would not comply with the subpoenas, and on December 16, 2003, the Contempt Branch filed an application in the United States District Court for the District of Columbia, seeking to enforce the subpoenas. The dis *1200 trict court referred the matter to a magistrate judge.
On January 16, 2004, Cooper Tire moved to dismiss for lack of subject matter jurisdiction, or in the alternative to transfer the matter to the Northern District of Mississippi. Cooper Tire also challenged the subpoenas on their merits, claiming they exceeded the investigatory authority of the NLRB.
' On March 29, 2004, the magistrate judge ruled (1) the district court had jurisdiction, (2) venue in the District of Columbia wás appropriate, and (3) the Contempt Branch had authority to issue the subpoenas. On May 10, 2004, the magistrate judge denied Cooper Tire’s motion for reconsideration. On May 20, 2004, Cooper Tire appealed the magistrate judge’s- order to the district court, and the district court rejected the appeal on September 2, 2004, ordering Cooper Tire to comply with the March 29, 2004 order. Cooper Tire then filed this appeal.
II
29 U.S.C. § 161(2) permits the NLRB to apply.to enforce a subpoena before the district court “within the jurisdiction of which the inquiry is carried, on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business.” (Emphasis added.) A very similar subpoena enforcement provision appears in the governing statutes of several other federal administrative agencies. To establish the jurisdiction of the United States District Court for the District of Columbia, the NLRB relies on a broad reading of the phrase “inquiry is carried on.” The NLRB reasons that its Contempt Branch is located in the District of Columbia, and therefore the inquiry is being carried on in the District of Columbia. The NLRB’s interpretation would, of course, give the NLRB the choice of any forum it liked,’ simply by locating its investigation in that jurisdiction, though as a practical matter the NLRB’s choice is more limited because its Contempt Branch is located in the District of Columbia. In any case, the NLRB’s interpretation would allow the NLRB to pick a forum convenient to its legal staff, while possibly forcing the subpoenaed party to go to court in a distant and inconvenient jurisdiction.
Cooper Tire reads the phrase “inquiry is carried on” in § 161(2) more narrowly, focusing on the subject matter of the inquiry. Cooper Tire argues the “inquiry” relates only to the union-organizing activities at its Tupelo plant, and therefore Mississippi is the “jurisdiction of which the inquiry is carried on.” 29 U.S.C. § 161(2). No one is investigating anything that happened in the District of Columbia, Cooper Tire asserts; rather, the Contempt Branch just happens to be located there.
The opposite inferences the litigants draw from the language of the statute are both at least plausible, and therefore they establish one point: the phrase “within the jurisdiction of which the inquiry is carried on” is ambiguous. Certainly, if an actual hearing is -underway before an administrative law judge, and evidence is being presented for the judge to examine on the record, then the location of that hearing is the location of the inquiry. FTC v. Browning, 435 F.2d 96, 99 n. 7 and 100 (D.C.Cir.1970); see also U.S. Inti Trade Comm’n v. ASAT, Inc., 411 F.3d 245 (D.C.Cir.2005); FTC v. MacArthur, 532 F.2d 1135 (7th Cir.1976). In that case, the “inquiry” is the hearing itself, and the evidence to be offered at the hearing is the subject matter of the inquiry.
Quite a different question is presented, however, where no formal hearing is underway, and the agency has issued the subpoena as part of a preliminary investigation’ of possible wrongdoing. In that *1201 case, the investigators might be in one place, the matter under investigation might be in another, and the location of the “inquiry” might be one, the other, or both. Of course, the NLRB’s regional offices often conduct investigations, but the NLRB has chosen to conduct contempt investigations in Washington, D.C., which in this case has placed its investigators a great distance from the matter they are investigating. Where, in those circumstances, is the inquiry “carried on”?
Browning supports a broad reading of § 161(2) that would include the location of the investigative office as one of the places where the inquiry is carried on. If a hearing located in Washington, D.C., gives the district court in Washington, D.C., jurisdiction to enforce agency subpoenas, see Browning, 435 F.2d at 100, then why not an investigating office located in Washington, D.C.? Browning, however, is not the only precedent on point, and in fact it is not the most relevant precedent. Where the inquiry is an agency investigation, not a formal hearing, we focus on, among other things, the location of the subject matter of the inquiry. FEC v. Comm. to Elect Lyndon La Ronche, 613 F.2d 849, 856-57 (D.C.Cir.1979). This focus is not a gloss on the statutory terms that alters their plain meaning; rather, it is our effort to define those terms. Specifically, we have articulated a two-part test for determining the location of an investigative inquiry for purposes of district court jurisdiction to enforce agency subpoenas: “(1) whether [the location bears] a sufficiently reasonable relation to the subject matter of the investigation ..., and (2) whether the agency’s choice of this [location for enforcement] ... exceed[s] the bound of reasonableness.” Id. (internal quotation marks and citation omitted); cf. dis. op. at 1209 (relying on the location of the Contempt Branch’s office, rather than the subject matter of the inquiry, to satisfy the first part of the two-part test).
In La Ronche, the court concluded that enforcement in the District of Columbia was proper because of the nexus between the District and the Federal Election Commission’s investigation. The court noted the FEC’s Washington, D.C., headquarters was the “hub” of its national investigative activity. La Rouche, 613 F.2d at 857. The court also identified several factors that aid in the application of the two-part test, id. at 855, and ASAT, 411 F.3d at 249, further clarified these factors, listing them as follows:
the place where the [agency] held its hearing, the place where it made the decision to authorize the investigation, the place where the subpoenas were issued, the place where its correspondence emanated, the place where the [agency] determined that unlawful actions had occurred, the location of the documents and witnesses, and the location of the headquarters of the subpoenaed company.
Id. Significantly,' these factors are not weighted against one another, and ASAT did not suggest a simplistic tallying of factors would be determinative. The first four factors, for example, favor the convenience of the agency, but in this context, the burden on the subpoenaed party might be a more significant consideration. Moreover, the factors do not replace the test. The crucial question remains whether the jurisdiction bears a “reasonable relation to the subject matter' of the investigation,” for it was our determination in La Ronche that the subject matter of an investigation is an important consideration in locating the investigation. 613 F.2d at 856-57.
The parties emphasize different aspects of the La Ronche analysis. Cooper Tire emphasizes the La. Rouche court’s specific reference to the “subject matter” of the inquiry. Even if the inquiry is arguably taking place in the District of Columbia *1202 (by reason of being directed out of the NLRB’s Contempt Branch office in Washington, D.C.), the subject matter of the inquiry is surely located in Mississippi. Moreover, Mississippi is in the Fifth Circuit, which is the court that issued the cease-and-desist order that is the basis of the alleged contempt, and Mississippi is also where the subpoenaed party is located. The NLRB, on the other hand, relies on the several factors that tie its investigation to the District of Columbia: (1) its Contempt Branch is located in the District of Columbia, (2) it issued its subpoenas in the District of Columbia, (3) it sent letters to Cooper Tire from the District of Columbia, and (4) Cooper Tire responded to the Contempt Branch’s earlier subpoena by sending records and correspondence to the District of Columbia. These factors, of course, do not make the District of Columbia the location of the inquiry if (as La Rouche requires) we must consider whether there is a reasonable relation to the subject matter of the inquiry, not merely whether the agency has chosen it as the command center of the inquiry.
The NLRB and our dissenting colleague argue strenuously that this court has repeatedly found agency subpoenas properly enforced in the District when the subject matter of the investigation — the alleged violation or misconduct — occurred elsewhere. True. See ASAT, 411 F.3d 245; La Rouche, 613 F.2d 849; Browning, 435 F.2d 96; see also FTC v. Cockrell, 431 F.Supp. 558 (D.D.C.1977) (cited approvingly in La Rouche, 613 F.2d at 855-56). However, every one of these cases involved an investigation that encompassed multiple jurisdictions and could be characterized as nationwide in scope. When an investigation is nationwide in scope, its subject matter is not located in any particular place, and the location of the investigating office may well be the most reasonable choice for purposes of subpoena enforcement. This case is different. The investigation concerns a single employer and a single dispute related to union-organizing activity at a single plant. The subject matter of this inquiry is located in a particular place, and that place is Tupelo, Mississippi. Therefore, if we accept the NLRB’s argument, we will not be following precedent; we will be breaking new trail.
The facts of La Rouche are informative. That case involved a Federal Election Commission investigation of the Committee to Elect Lyndon La Rouche, focusing on whether Lyndon La Rouche qualified for federal matching funds. 613 F.2d at 851. The FEC was located in Washington, D.C., but much of the subject matter of the investigation was in New York. Id. at 851-53. Therefore, factually the case was somewhat like the one before us. The FEC successfully enforced its subpoena in the district court for the District of Columbia, and this circuit affirmed. Id. Our opinion, however, focused particularly on the fact that the FEC was conducting a nationwide investigation, with the District of Columbia as the “hub” of that investigation. Id. at 857. Specifically, the FEC was inquiring into possible improprieties of a national political party in its certified record of donations from twenty states, prepared in the course of a national political campaign. In the course of its investigation, the FEC conducted field interviews in Delaware, Massachusetts, Wisconsin, and Indiana, as well as an audit of records in New York. Id. at 857-58. Though many of the activities under investigation took place in New York, we concluded that the nationwide scope of the investigation justified jurisdiction in the District of Columbia where the investigative office was located. Id. at 855-58. Our analysis could not have been more clear that the nationwide scope of the investigation was determinative. In the course of our discussion of existing circuit precedent, we emphasized that *1203 “each [case] involv[ed] an essentially nationwide investigation conducted from an agency’s national office.” Id. at 855. We then selected quotations from these precedents (including Browning) that emphasized the national scope of the investigations at issue. Id. at 855-56. Finally, in applying these precedents, we noted that the case before us also involved an “investigation [that] was not localized ... but rather was nationwide in scope.” Id. at 857. We concluded: “It is our view that here, as in [prior cases from our circuit], the Commission was conducting an essen-. tially nationwide investigation from its national office in the District of Columbia and, accordingly, it should be afforded broad discretion in selecting this jurisdiction as its place of inquiry.” Id. at 858 (emphasis added).
Significantly, in La Rouche, we chose to distinguish, rather than disapprove, FTC v. Western General Dairies, Inc., 432 F.Supp. 31 (N.D.Cal.1977), in which the district court in the Northern District of California, applying a similar jurisdictional provision, held that it lacked jurisdiction to enforce subpoenas issued as part of an investigation of matters in Utah and Idaho, even though the investigation was being conducted from an office in the Northern District of California. In La Rouche, we agreed with the reasoning of Western General Dairies and distinguished it, explaining that the FEC could exercise jurisdiction in the District of Columbia because a nationwide investigation was being centrally directed from the District of Columbia. La Rouche, 613 F.2d at 857 n. 8. Our careful effort to distinguish Western General Dairies, rather than simply to reject the reasoning of that case, indicates we found the case persuasive and is further evidence our holding in La Rouche hinged upon the investigation having a national scope.
The NLRB relies on ASAT, arguing that where agency investigations are carried out by an office in the District of Columbia, “the district court for the District of Columbia often, if not always, would have subject matter jurisdiction.” 411 F.3d at 250. ASAT, however, involved a formal hearing being conducted in the, District of Columbia, not just a preliminary investigation. That fact made it analogous to Browning, in which we stated that the location of a formal adjudicatory hearing is the place of the inquiry for purposes of subpoena enforcement. Browning, 435 F.2d at 99 n. 7 and 100. Moreover, ASAT merely applied and reaffirmed our previous holding in La Rouche; it did not call into question any of the reasoning of La Rouche. The NLRB is correct that, in deciding ASAT, we put little emphasis on La Rouche’s clear requirement that an investigation must be nationwide in scope to justify subpoena enforcement in a district that has no connection to the inquiry other than the location of the investigating office. We did not, however, need to emphasize this point, because the investigation at issue in ASAT was unquestionably nationwide in scope. It involved a patent infringement dispute that was proceeding in the District of Columbia, which we described as the “ ‘hub’ ” of the investigation, ASAT, 411 F.3d at 249 (quoting La Rouche, 613 F.2d at 857). The subpoenas at issue were directed to three companies, two located overseas and one in California, and the patent infringement investigation was not in any way limited to activities occurring in, one locality. Id. at 246-47.
The dissent also notes that, under § 161(2), an agency may enforce a subpoena in a district court “within the jurisdiction of which [the subpoenaed party] ... is found or resides or transacts business.” According to the dissent, our holding renders this provision superfluous. Dis. op. *1204 at 1205. Not so. We hold only that, under the specific circumstances of this case, involving a pre-hearing investigation of matters that occurred in Mississippi, the place of the inquiry does not include the District of Columbia. It happens that, in this case, Mississippi would probably qualify as the place of the inquiry and also as a place where Cooper Tire is “found ... or transacts business,” but in another case, this conjunction of the provisions of § 161(2) might not exist. Examples include circumstances where a third party is subpoenaed, as occurred in ASAT, or where the subject matter of the inquiry is in one state, but additional evidence is sought from another state where the company under investigation transacts business.
Accordingly, we decline to read ASAT as undermining the principles we articulated in La Rouche. In the present case, we are persuaded that, in the absence of the nationwide investigation present in La Rouche and ASAT, the district court for the District of Columbia does not have subject matter jurisdiction to enforce the subpoenas. We do not, however, hold that subpoena enforcement in the District of Columbia always requires a national investigation; enforcement in the District, as anywhere else, depends on an application of the factors listed in La Rouche and ASAT, and a national investigation merely works to tip the scale in favor of the District.
Ill
The district court lacked subject matter jurisdiction to enforce the subpoenas at issue in this case. Accordingly, we vacate the order of the district court and remand with instructions to dismiss the case.

So ordered.