*Nat'l Lab. Rels. Bd. v. Universal Smart Conts., LLC*

# United States Court of Appeals
# For the Second Circuit

August Term 2024

Argued:   January 10, 2025
Decided:   February 3, 2026

No. 24-149

---

NATIONAL LABOR RELATIONS BOARD,

*Applicant-Appellee,*

*v.*

UNIVERSAL SMART CONTRACTS, LLC; PARTY SHUTTLE
TOURS, LLC; CITY INFO EXPERTS, LLC; CHARLES THOMAS
SCHMIDT,

*Respondents-Appellants.*

---

Appeal from the United States District Court
for the Southern District of New York
No. 23-mc-51, Valerie E. Caproni, *Judge.*

---

Before:   SULLIVAN, BIANCO, and ROBINSON, *Circuit Judges.*

Appellants Universal Smart Contracts, LLC, Party Shuttle Tours, LLC, City Info Experts, LLC, and Charles Thomas Schmidt appeal from an order of the United States District Court for the Southern District of New York (Caproni, *J.*) granting an application of the National Labor Relations Board ("NLRB") to enforce four administrative subpoenas *duces tecum* and awarding attorneys' fees and costs.

The district court rejected Appellants' challenges to subject-matter jurisdiction, personal jurisdiction, and venue, concluding that the National Labor Relations Act authorizes nationwide service of process and that the NLRB's inquiry was being carried on in the Southern District of New York. The district court also denied Appellants' request to transfer the case to the Southern District of Texas and held Appellants liable for the NLRB's attorneys' fees and costs. The court subsequently issued an order specifying the amount of that liability.

On appeal, Appellants challenge the district court's order enforcing the subpoenas, its refusal to transfer this case, and its award of fees and costs in favor of the NLRB. For the following reasons, we conclude that the district court had subject-matter and personal jurisdiction to enforce the subpoenas, that venue was proper, and that the district court did not abuse its discretion in declining to transfer the case or in awarding fees and costs in favor of the NLRB. But because Appellants did not file a timely notice of appeal with respect to the district court's subsequent order fixing the amount of the NLRB's fees and costs, we lack jurisdiction to review it. Accordingly, we affirm in part and dismiss in part for lack of appellate jurisdiction.

AFFIRMED IN PART AND DISMISSED IN PART.

> C. THOMAS SCHMIDT, Schmidt Law Firm, PLLC, Houston, TX, *for Respondents-Appellants*.
>
> AMANDA LEONARD, (Jennifer A. Abruzzo, Peter Sung Ohr, Nancy E. Kessler Platt, Dawn L. Goldstein, Helene D. Lerner, Kevin P. Flanagan, Paul A. Thomas, and David P. Boehm, *on the* brief), Washington, DC, *for Applicant-Appellee*.

RICHARD J. SULLIVAN, Circuit Judge:

Appellants Universal Smart Contracts, LLC, Party Shuttle Tours, LLC, City Info Experts, LLC, and Charles Thomas Schmidt appeal from an order of the

2

district court granting the National Labor Relations Board's ("NLRB") application to enforce four administrative subpoenas *duces tecum* and awarding attorneys' fees and costs. On appeal, Appellants challenge the district court's order enforcing the subpoenas, its refusal to transfer this case, and its award of fees and costs in favor of the NLRB. Appellants also challenge the district court's subsequent determination of the amount of that award.

As explained below, we conclude that the district court had subject-matter and personal jurisdiction to enforce the subpoenas, that venue was proper, and that the district court did not abuse its discretion in declining to transfer the case or in awarding fees and costs in favor of the NLRB. But because Appellants did not file a timely notice of appeal with respect to the district court's subsequent order fixing the amount of the NLRB's fees and costs, we lack jurisdiction to review that order. Accordingly, we affirm in part and dismiss in part for lack of appellate jurisdiction.

## I. BACKGROUND

In February 2012, non-party New York Party Shuttle, LLC ("NYPS") terminated Fred Pflantzer, one of the company's New York City tour guides. Suspecting that Pflantzer had been fired for attempting to unionize, the NLRB's Manhattan Regional Office (the "Manhattan Office") opened an investigation,

3

which eventually resulted in administrative enforcement proceedings for violations of the National Labor Relations Act ("NLRA").

In 2013, the NLRB's adjudicative body, referred to as the "Board," issued a decision finding that Pflantzer's termination violated the NLRA. *See N.Y. Party Shuttle, LLC & Fred Pflantzer*, 359 NLRB 1046, 1047 (2013). The Board ordered NYPS to make Pflantzer whole for any loss of earnings suffered on account of his unlawful discharge and to either reinstate Pflantzer's employment as a tour guide or, if that position was no longer available, appoint him to a substantially equivalent position. *See id.* at 1051. NYPS reinstated Pflantzer in July 2014, but fired him again just two weeks after his return.

After years of further litigation, the Board issued another decision holding NYPS and several of its affiliates, including Appellant Party Shuttle Tours, LLC, liable as a single employer for backpay and benefits in the amount of $91,912 plus interest. *See N.Y. Party Shuttle, LLC*, No. 02-CA-073340, 2020 WL 5658307, at *1–2 (N.L.R.B. Sept. 16, 2020). Apart from one portion of the backpay award, the Fifth Circuit affirmed the Board's order on appeal, resulting in a reduced award of $66,794 plus interest. *N.Y. Party Shuttle, L.L.C. v. Nat'l Lab. Rels. Bd.*, 18 F.4th 753, 769 (5th Cir. 2021).

The story did not end there. When NYPS and the other judgment debtors failed to pay the surviving portion of the Board's judgment, the Manhattan Office referred the matter to the agency's Contempt, Compliance, and Special Litigation Branch (the "Contempt Branch"), based in Washington, D.C., to conduct further proceedings. The judgment debtors, however, subsequently informed the Contempt Branch that they were no longer doing business and lacked the ability to satisfy the judgment. Thereafter, on September 22, 2022, the Contempt Branch issued an administrative subpoena *duces tecum* to each Appellant seeking documents that might help determine whether Appellants could be held liable for the judgment on a derivative basis. Appellants failed to comply with those subpoenas.

The NLRB initiated this enforcement proceeding on February 28, 2023, through an application for an order directing Appellants to comply with the subpoenas and to pay the agency's attorneys' fees and costs. On March 10, 2023, the district court issued an order requiring Appellants to appear at a hearing and show cause why an order directing them to comply with the subpoenas should not be issued. The NLRB served a copy of its enforcement application and the district court's order to show cause on Appellants five days later. Pursuant to an

5

order of the district court, the NLRB then perfected service of the application and order to show cause on August 23, 2023.

Appellants, meanwhile, moved to dismiss the NLRB's application on the grounds that the district court lacked subject-matter jurisdiction, venue, and personal jurisdiction over them. In the alternative, Appellants asked the district court to transfer the case to the Southern District of Texas, where they reside. The district court denied Appellants' motion on November 16, 2023, and ordered Appellants to comply with the subpoenas. The district court also awarded the NLRB attorneys' fees and costs, but deferred consideration of the amount of the award. Instead, the district court directed the parties to meet and confer regarding the amount and ordered the NLRB to file a fees motion in the event that the parties could not agree. On January 12, 2024 – before the district court had entered any order fixing the amount of fees and costs – Appellants filed a notice of appeal from the district court's November 16, 2023 order.

The parties failed to reach agreement on the amount of the NLRB's fees and costs, so the NLRB moved for an order fixing the amount of the award on January 31, 2024. The district court granted that motion through a second written order issued on March 5, 2024, which awarded the NLRB $38,123 in attorneys' fees and

$321.42 in costs.   Appellants neither filed a separate notice of appeal following the district court's March 5, 2024 order, nor amended their existing notice.

## II.   DISCUSSION

On appeal, Appellants argue that the district court lacked subject-matter jurisdiction, venue, and personal jurisdiction.   We review questions of law relating to these challenges *de novo*, and any underlying factual findings for clear error.   *See In re Fairfield Sentry Ltd.*, 147 F.4th 136, 150 (2d Cir. 2025); *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).   Appellants also contend that the district court erred in awarding attorneys' fees and costs to the NLRB and by declining to transfer this case to the Southern District of Texas.   We review those determinations for abuse of discretion.[1]   *See McDaniel v. County of Schenectady*, 595 F.3d 411, 416 (2d Cir. 2010); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006).

---

[1] Appellants also request, in passing, that we "reverse the portion of the [district court's November 16, 2023 order] that enforces the subpoenas and remand the case for a determination on the merits, giving Appellants an opportunity to assert substantive objections."   Appellants' Br. at 4–5.   Because Appellants failed to develop any meaningful argument in support of that request in their opening brief, we decline to address it.   *See Palin v. N.Y. Times Co.*, 113 F.4th 245, 279 (2d Cir. 2024) ("It is a settled appellate rule that issues unaccompanied by some effort at developed argumentation[] are deemed forfeited." (alteration adopted and internal quotation marks omitted)).

**A. Subject-Matter Jurisdiction and Venue**

Appellants first argue that the district court lacked subject-matter jurisdiction to adjudicate this enforcement proceeding, and that the Southern District of New York is the wrong venue to hear this case. Those arguments depend on the same language of the NLRA's subpoena-enforcement provision, which states:

> In case of contumacy or refusal to obey a [subpoena] issued to any person, any district court of the United States or the United States courts of any Territory or possession, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof.

29 U.S.C. § 161(2). According to Appellants, subject-matter jurisdiction is lacking and venue is improper because the NLRB's "inquiry" related to the subpoenas was not "carried on" within the Southern District of New York. Appellants' Br. at 36. We disagree.

As an initial matter, Appellants are wrong to suggest that the location where an NLRB inquiry is "carried on" limits the subject-matter jurisdiction of the district

8

courts. We do not consider a procedural requirement in a federal statute to be jurisdictional unless Congress has "clearly stated" that it is. *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 204 (2022). To be sure, section 161(2) refers to the "jurisdiction" of the federal district courts three times. But "[j]urisdiction, it has been observed, is a word of many, too many, meanings." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (internal quotation marks omitted). And here, none of the three uses of the term "jurisdiction" in section 161(2) refers to the district courts' *subject-matter* jurisdiction – that is, to "the courts' statutory or constitutional *power* to adjudicate [a] case." *Id.* at 89.

For starters, the statute's references to the "jurisdiction [within] which the inquiry is carried on" and "the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides," 29 U.S.C. § 161(2), plainly "denote a geographical area" for purposes of specifying venue. *United States v. Ortiz*, 817 F.3d 553, 555 (7th Cir. 2016). These uses of the term "jurisdiction" therefore "say[] nothing about whether a federal court has subject-matter jurisdiction to adjudicate claims." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 164 (2010).

Section 161(2)'s reference to the district courts' "jurisdiction . . . to issue an

9

order" enforcing a subpoena, 29 U.S.C. § 161(2), does not implicate subject-matter jurisdiction either. As we have explained in interpreting the Freedom of Information Act's ("FOIA") similarly worded enforcement provision, such a use of the term jurisdiction "reference[s] remedial power, not subject-matter jurisdiction." *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 566 (2d Cir. 2016) (discussing 5 U.S.C. § 552(a)(4)(B))[2]; *see also Steel Co.*, 523 U.S. at 90 (collecting examples). We therefore reject Appellants' challenge to the district court's subject-matter jurisdiction, which was proper under 28 U.S.C. § 1345.[3]

Having determined that section 161(2) creates a non-jurisdictional venue requirement, we agree with the NLRB that the subpoenas arose out of an "inquiry"

---

[2] In relevant part, FOIA's enforcement provision states:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B).

[3] We acknowledge that some courts have suggested that section 161(2) *is* jurisdictional. *See, e.g.*, *Nat'l Lab. Rels. Bd. v. Line*, 50 F.3d 311, 314 (5th Cir. 1995) ("Every court that has addressed the subpoena enforcement provisions for other federal agencies with statutes worded similarly to 29 U.S.C. § 161 has concluded that venue and jurisdiction are synonymous for these statutes."). But those decisions largely predate the Supreme Court's effort to "bring some discipline to the use of" the term "jurisdictional," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011), and generally amount to what the Supreme Court has characterized as "drive-by jurisdictional rulings" that are entitled to little weight. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (internal quotation marks omitted).

that "[wa]s carried on" within the Southern District of New York. 29 U.S.C. § 161(2). Specifically, the subpoenas relate to an inquiry by the Manhattan Office, which is located in the Southern District, seeking to redress violations of the NLRA in connection with Pflantzer's termination. Pflantzer's employment and termination, which were the subject of that inquiry, also took place in the Southern District. And the underlying unfair-labor-practice hearing arising from the inquiry was held in the Southern District as well. *See N.Y. Party Shuttle, LLC Emp. & Fred Pflantzer an Individual*, No. 02-CA-073340, 2012 WL 4174865 (Sept. 19, 2012). Thus, whether the place of the inquiry is tied to the *situs* of the investigating office or the subject matter of the investigation, the Southern District is the place of the inquiry. *Compare Nat'l Lab. Rels. Bd. v. Cooper Tire & Rubber Co.*, 438 F.3d 1198, 1202 (D.C. Cir. 2006) (evaluating the location of the inquiry with reference to the subject matter of the inquiry, not the "command center" of the inquiry), *with id.* at 1204 (Griffith, J., dissenting) (arguing that the jurisdiction in which an "inquiry is carried on" encompasses the location of an agency office investigating alleged wrongdoing).

Importantly, the scope of the inquiry has not been limited to the initial enforcement proceeding against NYPS itself, but has also included subsequent

derivative-liability proceedings, held within the Southern District, seeking to enforce the Board's judgment. *See N.Y. Party Shuttle, LLC*, 2020 WL 5658307, at *2. In other words, the inquiry includes not only the initial effort to determine whether Pflantzer's termination violated the NLRA, but reasonably encompasses an ongoing effort to determine which persons and entities may be held liable for those violations.

It is true, as Appellants point out, that the Manhattan Office ultimately enlisted the Contempt Branch (located in Washington, D.C.) to handle the derivative-liability investigation giving immediate rise to the subpoenas. But such intra-agency cooperation neither severed the link between the subpoenas and the underlying inquiry nor shows that the inquiry is at an end. Instead, the Contempt Branch's derivative-liability investigation is properly viewed as a necessary adjunct of the Manhattan Office's efforts to enforce the NLRA with respect to Pflantzer's termination – an ongoing, Southern District-based inquiry.

Accordingly, we hold that venue to enforce the NLRB's subpoenas in this matter properly lies in the Southern District of New York under section 161(2).[4]

---

[4] To the extent Appellants contend that venue was improper under 28 U.S.C. § 1391(b), that argument fails because section 1391 applies "[e]xcept as otherwise provided by law." Section 161(2), not section 1391(b), controls our venue analysis in this case.

**B. Personal Jurisdiction**

Appellants argue next that the district court lacked personal jurisdiction to order them to comply with the subpoenas. The NLRB, Appellants contend, failed to properly serve them because no summons was ever issued or served. Appellants also maintain that regardless of whether service was proper, personal jurisdiction is lacking because, as individuals and entities located in Texas, none of them had "sufficient minimum contacts" with New York. Appellants' Br. at 21. Appellants finally contend that, even if such contacts *were* present, the district court's exercise of jurisdiction over them was "unfair and unreasonable" considering the significant geographic distance between Texas and New York. *Id.* at 27. We again disagree.

A federal court's exercise of personal jurisdiction is both statutory and constitutional in nature, "requir[ing] satisfaction of three primary requirements." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). *First*, "the plaintiff's service of process upon the defendant must have been procedurally proper." *Id.*; *see Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as

defendant."); Fed. R. Civ. P. 4(k)(1) (providing that service of process "establishes personal jurisdiction over a defendant"). *Second*, "there must be a statutory basis for personal jurisdiction that renders such service of process effective." *Licci*, 673 F.3d at 59. That statutory basis may arise under either state or federal law. *See* Fed. R. Civ. P. 4(k)(1)(A), (C) (allowing the district courts to exercise personal jurisdiction to the same extent as "a court of general jurisdiction in the state where the district court is located" or "when authorized by a federal statute"). And *finally*, the district court's assertion of personal jurisdiction must otherwise "comport with constitutional due process principles." *Licci*, 673 F.3d at 60.

Contrary to Appellants' assertions, each of these requirements was satisfied in this case.

*First*, Appellants are wrong that the NLRB's service of its enforcement application and the district court's order to show cause, in lieu of a summons, was improper. A federal court's exercise of personal jurisdiction requires "service of a summons *or other authority-asserting measure* stating the time within which the party served must appear and defend." *Murphy Bros.*, 526 U.S. at 350 (emphasis added). Here, the NLRB perfected service by serving on Appellants a copy of the application and the order to show cause. The order was signed by the district

14

court, referred to the NLRB's enforcement application, and ordered Appellants to show cause at a scheduled hearing why the district court should not enter an order directing them to comply with the subpoenas. In the absence of any reason to conclude that service of the order to show cause was not "reasonably calculated . . . to apprise" Appellants of these proceedings, we see no constitutional defect in the NLRB's method of service. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Nor did the NLRB's service of the order to show cause instead of a summons violate the Federal Rules. True, Rule 4 generally provides that "[a] summons must be served." Fed. R. Civ. P. 4(c)(1). But in proceedings to enforce a subpoena issued by a federal agency under a federal statute, the Federal Rules do not apply to the extent "otherwise provided . . . by court order." Fed. R. Civ. P. 81(a)(5). And in this case, the district court authorized the NLRB to perfect service by serving a copy of the application and order to show cause on Appellants. That the NLRB did not *separately* serve a summons is therefore inconsequential to the propriety of service under the Federal Rules.

*Second*, the district court's exercise of personal jurisdiction over Appellants was "authorized by a federal statute." Fed. R. Civ. P. 4(k)(1)(C). In proceedings

15

to enforce an NLRB subpoena, the NLRA allows service of process "in the judicial district wherein the defendant or other person required to be served resides or may be found." 29 U.S.C. § 161(5). We have held that nearly identical language contained in section 27 of the Securities Exchange Act of 1934 authorizes nationwide service of process. *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991); *see* 15 U.S.C. § 78aa(a) (providing that process "may be served in any . . . district of which the defendant is an inhabitant or wherever the defendant may be found"). We see no reason to treat section 161(5) differently and therefore hold that the NLRA authorizes nationwide service of process in proceedings to enforce a subpoena issued by the NLRB under the statute. Thus, the NLRB's service of process on Appellants pursuant to section 161(5) established the district court's personal jurisdiction over them as a statutory matter. *See Kidder*, 925 F.2d at 562; *see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) ("When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction.").

*Finally*, the district court's exercise of personal jurisdiction is consistent with due process notwithstanding Appellants' asserted lack of contacts with New York.

Because a federal statute authorizing nationwide service of process supplies the basis for personal jurisdiction in this case, "[i]t is not the State of New York but the United States which would exercise its jurisdiction over [Appellants]." *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974) (internal quotation marks omitted). Thus, Appellants' "contacts with the forum state play no magical role in the [due process] analysis." *Republic of Panama*, 119 F.3d at 946. Instead, "where . . . the defendants reside within the territorial boundaries of the United States, the minimal contacts, required to justify the federal government's exercise of power over them, are present." *Mariash*, 496 F.2d at 1143 (internal quotation marks and footnote omitted). Since it is undisputed that Appellants resided within the United States at all relevant times, their asserted lack of contacts with New York does not, on its own, suggest that the district court's exercise of personal jurisdiction over them violated due process. *See id.*

Appellants' residency within the United States, however, does not end the due process inquiry. Even when a party's relationship to the forum otherwise justifies the sovereign's exercise of personal jurisdiction, "jurisdictional rules may not be employed in such a way as to make litigation so gravely difficult and inconvenient that [the] party unfairly is at a severe disadvantage in comparison to

17

his opponent." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (internal quotation marks omitted). Courts therefore must determine "whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010) (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). To defeat an otherwise-proper assertion of personal jurisdiction, however, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477.

Here, we find no basis to conclude that the district court's exercise of personal jurisdiction over Appellants would be "unfair and unreasonable" under the Fifth Amendment. Appellants' Br. at 27. Appellants assert, in a largely conclusory fashion, that the geographic distance between Texas – where they reside – and New York renders the district court's assertion of personal jurisdiction over them unduly burdensome. But Appellants make no effort to quantify the additional expense attributable to this litigation taking place in New York rather than in Texas. Nor do they identify any necessary witnesses who would be unduly burdened by virtue of the NLRB's choice of forum or offer any

18

persuasive explanation as to what effect litigating this case in New York would otherwise have on their ability to present their case. Indeed, Appellants barely acknowledge "the conveniences of modern communication and transportation" that are likely to "ease" the burdens of defending "this case in New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 174 (2d Cir. 2013) (internal quotation marks omitted). Put simply, Appellants have failed to make a "compelling case" that it is unreasonable or unfair for the district court to exercise personal jurisdiction in this straightforward subpoena-enforcement proceeding. *Burger King Corp.*, 471 U.S. at 477.

For these reasons, we conclude that the district court properly exercised personal jurisdiction over Appellants.

**C. Transfer of Venue**

Next, Appellants challenge the district court's denial of their request to transfer this matter to the Southern District of Texas. We remain unpersuaded.

A district court may, "[f]or the convenience of parties and witnesses" and "in the interest of justice," "transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When deciding such a motion, a court may consider:

19

> (1) plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation marks omitted). The party seeking transfer "carries the burden of making out a strong case for transfer." *Id.* at 114 (internal quotation marks omitted).

We perceive no abuse of discretion in the district court's refusal to transfer this matter. In seeking transfer, Appellants contend that "[a]ll of the witnesses and documents related to the Appellants and the subpoenas are in Texas" and that litigating this enforcement action in the Southern District of New York would be "terribly burdensome." Appellants' Br. at 34. But as the district court explained, "[d]ocuments located outside of this district can be transferred electronically." App'x at 18. And Appellants do not identify any Texas-based witnesses whose travel to New York would be necessary to resolve this summary enforcement proceeding. Nor does Appellants' conclusory assertion that litigating this proceeding in the Southern District of New York would be unduly burdensome show that the district court was required to transfer this matter. We therefore

reject Appellants' contention that the district court abused its discretion in denying their transfer request.

### D. Attorneys' Fees and Costs

Finally, Appellants challenge the district court's award of $38,123 in attorneys' fees and $321.42 in costs to the NLRB. Appellants first contend that the district court abused its discretion by determining that the NLRB was entitled to an award of fees and costs in the first place, a ruling reflected in the district court's November 16, 2023 order directing Appellants to comply with the subpoenas. Appellants also challenge the district court's subsequent assessment of the amount of the fees and costs in its March 5, 2024 order and judgement. To that end, Appellants argue that the district court failed to properly "segregate" the amount of the award "by matter and/or party," and that the NLRB's billing records were "wholly inadequate" to support the amount of the award. Appellants' Br. at 38–39.

We begin by addressing the NLRB's contention that we lack jurisdiction to consider these arguments. *See Marquez v. Silver*, 96 F.4th 579, 582 (2d Cir. 2024) (noting that "[i]n every appeal, . . . 'the first and fundamental question is that of jurisdiction'" (quoting *Steel Co.*, 523 U.S. at 94)). As the NLRB points out, "[a]

21

non-quantified award of attorneys' fees and costs is not appealable until the amount of the fees has been set by the district court." *O & G Indus., Inc. v. Nat'l R.R. Passenger Corp.*, 537 F.3d 153, 167 (2d Cir. 2008). The district court's initial decision to award fees and costs, rendered as part of its November 16, 2023 order enforcing the subpoenas, was therefore non-final at the time Appellants filed their notice of appeal on January 12, 2024. And Appellants neither filed a new notice of appeal from the district court's March 5, 2024 order determining the amount of the award nor amended their existing notice.

Nevertheless, we have jurisdiction to review the district court's November 16, 2023 decision holding Appellants liable for fees and costs. It is well-established in this Circuit that "a premature notice of appeal from a nonfinal order may ripen into a valid notice of appeal if a final judgment has been entered by the time the appeal is heard and the appellee suffers no prejudice." *Houbigant, Inc. v. IMG Fragrance Brands, LLC*, 627 F.3d 497, 498 (2d Cir. 2010) (internal quotation marks omitted). And while the district court's November 16 order was not final as to its award of attorneys' fees and costs at the time Appellants filed their notice of appeal, that portion of the order ripened upon the district court's subsequent entry of its March 5, 2024 order fixing the amount of the award. *See Berlin v.*

22

*Renaissance Rental Partners, LLC*, 723 F.3d 119, 128 (2d Cir. 2013).   Because there is

no indication that Appellants' premature notice of appeal resulted in any prejudice

to the NLRB, we have jurisdiction to consider the portion of the district court's

November 16 order holding Appellants liable for the NLRB's attorneys' fees and

costs.

On the merits, Appellants contend that the award of fees and costs was

inappropriate because "[n]othing in [their] behavior justifies any kind of deterrent,

sanction, or punishment."   Appellants' Br. at 38.   We disagree.   Although the

NLRA itself does not authorize an award of attorney's fees or costs, the district

court had discretion to consider such an award under Rules 37 and 45.   *See* Fed.

R. Civ. P. 81(a)(5) (providing that the Federal Rules generally apply "to

proceedings to compel testimony or the production of documents through a

subpoena issued by a United States officer or agency under a federal statute").

Here, the district court determined that an award of fees and costs was appropriate

because Appellants "repeatedly attempted to evade service and have had

numerous opportunities to comply with the subpoenas."   App'x at 20.

Appellants' substance-free assertion to the contrary does nothing to undermine

the district court's finding, which amply supports its exercise of discretion to award attorneys' fees and costs to the NLRB.

We lack jurisdiction, however, to review Appellants' challenges to the district court's March 5, 2024 order determining the specific amount of the award and holding Appellants jointly and severally liable for it. As noted, Appellants filed their notice of appeal almost two months *before* the district court issued that order, and before the NLRB had even filed its motion to liquidate the award. But by statute, "no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days *after* the entry of such judgment, order or decree." 28 U.S.C. § 2107(a) (emphasis added); *see also* Fed. R. App. P. 4(a)(1)(A). Thus, Appellants' January 12, 2024 notice of appeal – while sufficient to confer appellate jurisdiction over their challenges to the district court's November 16, 2023 order – cannot be stretched to cover the rulings contained in the district court's March 5, 2024 order. *See United States v. Kwasnik*, 55 F.4th 212, 216 (3d Cir. 2022) ("A notice of appeal cannot . . . encompass any order concerning a motion filed in the district court after the notice of appeal was filed."); *see also* Fed. R. App. P. 4(a)(4)(B)(ii). Appellants' failure to either file a second notice of appeal within

sixty days[5] of the March 5 order or to amend their existing notice therefore deprives us of jurisdiction to review the district court's determination of the amount of the award. *See Bowles v. Russell*, 551 U.S. 205, 209–11 (2007).

## III.   CONCLUSION

For these reasons, we affirm the district court's November 16, 2023 order and dismiss Appellants' purported appeal of the district court's March 5, 2024 order for lack of appellate jurisdiction.

---

[5] Because the NLRB is a "United States agency," Appellants had sixty days to file their notice of appeal.   28 U.S.C. § 2107(b)(2); Fed. R. App. P. 4(a)(1)(B)(ii).